The plaintiff sought to recover from the defendant damages which he sustained from the loss of certain property by fire, which he alleged was caused by the negligence of defendant in permitting sparks from one of its engines to escape, the result of which was the fire in question. Plaintiff is a farmer residing near La Salle, county of Niagara, and his property lies contiguous to defendant's road-bed. The Erie Railway runs parallel with the defendant's road, near the plaintiff's premises, and for some distance east and west of them. It is alleged that this fire was set by defendant's engine No. 113. It appeared in evidence that there was an Erie train which passed plaintiff's premises a short time prior to defendant's engine No. 113, and the claim was made on the part of defendant that the fire in question was set by sparks from the Erie engine.
It was claimed, on the part of the plaintiff, that the spark-arrester on defendant's engine was out of order and had been negligently allowed to remain out of order for some time, in consequence of which larger sparks than could have otherwise escaped were emitted from it, and that such sparks remained alive longer than smaller ones, and that they were the cause of the damage in question.
It was also claimed, on the part of the plaintiff, that the manner of the construction of spark-arresters, their general plan, as used by the defendant on its road, was faulty and not as good as those used on other roads, which fact was *Page 247 
within the knowledge of all persons familiar with the practical construction of engines and the conduct of railroad trains.
Considerable evidence had been given in the course of the trial in regard to the comparative safety of the two plans for spark-arresters as used, the one on the defendant's road and the other on the Erie Railway, plaintiff claiming that the Erie spark-arrester was much the better and safer of the two. Upon the trial, evidence having been given upon the various subjects, the defendant, to support its defense, called its engineer, who was in charge of engine No. 113 upon the night in question, and he testified that he had been a locomotive engineer, running upon passenger locomotives for sixteen years; that he examined the wire screen, or spark-arrester, on his engine when he reached Niagara Falls, for the purpose of seeing whether any thing was wrong with it, and after careful scrutiny he found that everything was all right. He was then asked whether he was acquainted with the kind of spark-arrester used on the Erie Railway locomotives, generally described as the Diamond stack, and he said that he was. The important question at issue was, which of these two classes of engines was more likely to set fire to property along the road, and that among other things depended upon the size of the sparks which the engines respectively emitted.
The following then took place:
"Q. Now, with reference to this engine of yours, state whether or not she discharged as many sparks as the Diamond stack of the Erie?
"Objected to as a conclusion of the witness and that he should describe what he saw.
"Defendant's counsel proposes to show by the witness that one discharges less sparks than the other.
"Objected to by plaintiff's counsel. Objection sustained and exception taken by defendant's counsel.
"By the COURT — I do not rule that you are not permitted to show his observation as to both.
"Q. Have you observed during the three years you run this, after it was changed, and had this style put in, have you *Page 248 
observed, and do you know as to whether this engine, or the engines used there upon the Erie road with the Diamond stack, discharged the most sparks; I ask you whether you know by observation?
"A. I know, sir, by observation.
"Q. Which do you say discharges the more sparks?
"Objected to the same as before stated. Objection sustained and exception taken by defendant's counsel."
Again he was asked this question: "Q. Have you been all these years that you have been a locomotive engineer, familiar with the various kinds of spark-arresters in use, and are you well acquainted with the Diamond?" He answered that he was. The following then took place:
"Q. Have you used the Diamond stack a good many years? A. Yes, sir.
"Q. Have you observed which sets the most fires? A. Yes, sir.
"Q. Will you state which?
"By the COURT — Do you mean of the two varieties?
"DEFENDANT'S COUNSEL — Yes, sir.
"PLAINTIFF'S COUNSEL — I object to it on the same ground as I stated to the question with reference to the sparks; that he may state what he observed, but not his conclusions.
"Objection sustained and exception taken by defendant's counsel.
"By the COURT — If he has had any observation as to any particular engine, and had noticed what that engine did, I think it is competent.
"Q. You have stated the extent to which you have seen No. 19 throw sparks? A. Yes, sir.
"Q. Have you ever seen 113 throw sparks to that extent?
"Objected to same as before. Objection sustained, and exception taken by defendant's counsel."
The witness also said that he observed a stream of fire and sparks from the Erie stacks every time he got along anywhere near them; that he used to run side by side nearly every day, *Page 249 
and at night, for some distance with an Erie engine; that at a particular time at night the two trains would run near together on the two roads, the Erie engine being a little ahead of him, about five or ten minutes. This question was then asked him: "Q. Now state whether there is any such stream of fire or sparks, or volume of sparks, emitted from engine No. 113?" This was objected to by plaintiff's counsel; the objection was sustained and defendant's counsel excepted.
We think the trial court erroneously sustained the plaintiff's objections to the above questions. The questions put were proper in that they sought to elicit facts, and not mere opinion. The witness was asked to state whether his engine discharged as many sparks as the Diamond stack of the Erie. This the court held was asking for an opinion, the court stating that defendant might show this witness' observation, but that he could not give his opinion. He was then asked if he had observed which of the two discharged the most sparks, and he stated that he had, and that he knew by observation; and he was then asked to say which discharged the most sparks. This, upon plaintiff's objection, the court excluded. We know of no other way in which the witness could have stated his observation than by answering this question; so of the other two questions. The evidence was upon a very material issue in the case. There were no means of stating the result of the witness' observation other than the determination he came to as to the fact that the one or the other emitted the most sparks, and hence it was proper that he should have been permitted to answer questions of that nature.
If this evidence had been given, it might not have changed the result. But that fact we do not know. It was material and proper evidence, and we cannot say that no harm resulted to the defendant from its exclusion. Other questions in regard to the admissibility of evidence were raised and argued here. Evidence was given on the part of the plaintiff, under objection by defendant, of the emission of sparks from this same engine, No. 113, of a very large size, several months after *Page 250 
the happening of the fire in question. At the time of its admission there was no proof in relation to the manner of the construction of that engine. The subsequent proof showed pretty clearly that the plan of its construction was such that if it were in good order no such sized sparks could be emitted from it. If sparks of the size described were emitted from this engine several months after the fire in question, it would seem quite clear that they came through the spark-arrester by reason of its being out of repair
In order to permit evidence, such as this, of what happened six months after the fire, it would be necessary to show either that through the fault of its construction sparks of that size could be emitted, or else that the engine was in the same condition of repair that it was when the fire in question occurred. As we have said, the evidence is pretty clear that the plan of construction would not permit sparks of that size to escape; and, therefore, the more important it would be to show, if such evidence is to be admitted, that the engine was in the same condition that length of time after the happening of the fire that it was in when the fire occurred. It will rest with the trial court, upon the new trial, to satisfy itself upon this state of things before permitting evidence of that nature to be given.
Other questions were raised which may not occur upon a new trial, and it is therefore unnecessary to discuss them.
For the reasons above given the judgment should be reversed and a new trial granted, costs to abide event.
All concur, except DANFORTH, J., not voting.
Judgment reversed *Page 251