GEORGE OLMSTEAD, Respondent, v. THE ORE-
GON SHORT LINE RAILROAD COMPANY, a
Corporation, Appellant.

No. 1526.   (76 Pac. 557.)

1. Railroads: Fire Set by Engine: Ownership: Parol Evi-
dence to Vary Deed.

A railroad company sued for the burning of a house by sparks negligently escaping from its engine cannot object to the introduction of parol evidence to show that a deed of the premises by the plaintiff did not include the buildings thereon, the grantee herself testifying to this effect.

2. **Same: Negligence: Prima Facie Case.**
    The prima facie case made by plaintiff suing a railroad com-
    pany for damages from a fire, by showing that it was
    started by an engine, is rebutted by proof that the engine
    was provided with necessary and proper appliances for
    preventing the escape of sparks and coals of fire, and that
    it was carefully operated; and, unless plaintiff's case is
    further aided by other proof of negligence, defendant is
    entitled to a verdict.[1]

3. **Same: Question for Jury.**
    In an action against a railroad company for the burning of a
    building by a fire caused by its engine, proof that cinders
    escaped from the engine, which would not pass through
    the netting used in the engine unless it was out of repair,
    and that other fires were started in the vicinity by the
    same engine, is sufficient to take plaintiff's case to the
    jury on the issue of negligence, though defendant's proof
    shows that the engine was equipped with necessary and
    proper appliances for preventing the escape of sparks, and
    that it was carefully operated.

(Decided April 22, 1904.)

Appeal from the Second District Court, Weber County.
—*Hon. H. H. Rolapp*, Judge.

Action to recover damages for property alleged to
have been destroyed by fire caused by sparks from a
passing locomotive of defendant. From a judgment in
favor of the plaintiff, the defendant appealed.

AFFIRMED.

*P. L. Williams, Esq.*, and *Geo. H. Smith, Esq.*, for
appellant.

*Alfred W. Agee, Esq.*, for respondent.

Evidence that sparks and cinders were issuing
from an engine and set out other fires tends to charge

---

[1] Preece v. Rio Grande Railroad Co., 24 Utah 493, 68 Pac. 413.

the company with negligent running of the engine. Startz v. Chicago, M. & St. P. Ry. Co., 74 Wis. 160, 42 N. W. Rep. 214; Smith v. Chicago, M. & St. P. Ry. Co., 4 S. Dak. 71, 55 N. W. Rep. 717.

Evidence that an engine threw sparks 100 feet is prima facie evidence that it was not properly equipped. Ill. Cen. R. Co. v. McClelland, 42 Ill. 355; Spaulding v. C. M. & St. P. Ry. Co., 33 Wis. 583; Fitch v. Railroad Co., 45 Mo. 324; Alpern v. Churchill, 23 Mich. 607, 19 N. W. Rep. 549; Burke v. L. & N. Ry. Co., 7 Heisk. 451, 12 Am. Ry. Rep. 497.

### STATEMENT OF FACTS.

Plaintiff brought this action to recover damages for property alleged to have been destroyed by fire caused by sparks from a passing locomotive of defendant company. The property alleged to have been destroyed consisted of a house—a frame building of three rooms—situate in Ogden City, Utah, and was about 120 feet from defendant's railroad track; also a horse, wagon, harness, carpenter tools, and other items of personal property. The complaint, in part, alleges that on the 10th day of August, 1902, between the hours of 9 a. m. and 1 p. m., the defendant ran and operated along its said line of railroad and track, and near the property of the plaintiff, a locomotive engine and cars, and that the engine was so negligently and carelessly constructed, and was so defective and out of repair, and was so carelessly and negligently managed, controlled, handled, and run at the time aforesaid, that sparks and coals of fire, in great and unusual numbers and of great and unusual size, were negligently and carelessly permitted to escape and were thrown from said engine onto plaintiff's building, and set fire to it, whereby all of said property was totally destroyed, to the damage of plaintiff in the sum of $1,450.90. The answer admits the corporate existence of the defendant company and its ownership of the railroad mentioned in plaintiff's

complaint, but denies all the other material allegations relied upon for a recovery. The property involved herein was situated on a bluff just west of Weber river, in the city of Ogden, and about 120 feet from defendant's railroad track. The buildings destroyed had formerly been a three-roomed dwelling house, but at the time they were burned down, and for some time prior thereto, had been used as a barn and carpenter shop. The passenger train which it is claimed set fire to the buildings passed up the hill from Ogden a few minutes before the fire was first discovered. When the train went by, witnesses observed cinders in great quantities falling about their premises, which were situate about the same distance from the railroad track as the property destroyed. One witness testified on this point, in part, as follows: "The sparks from the engine attracted my attention, for as the train went up the hill the sparks came over to the roof of our house. I noticed the engine was making a loud noise as it went up the hill, and was puffing hard. The cinders falling on the roof of my house first attracted my attention to the train. They sounded as near like hail as anything I could describe. . . . There was wind blowing from the northeast that morning which would carry the cinders as the train went up the hill towards Mr. Olmstead's property and building. . . . I noticed that the train on the morning of the accident was throwing an unusual amount of sparks and cinders." This evidence was corroborated by the testimony of other witnesses who testified in the case. Several other fires were started in the dry grass near the railroad track, in the vicinity of the buildings referred to, and about the time they caught on fire, which fires, the evidence tends to show, were started by the same locomotive which it is claimed set fire to the buildings mentioned. Defendant introduced evidence tending to show that the locomotive referred to, on the morning in question, was in first-class condition, and was equipped with the latest appliances for arresting and extinguishing sparks before they leave

the smokestack of the engine. It appears from the rec-
ord that, some time prior to the time the buildings in
question were burned, plaintiff sold and disposed of the
premises, the land upon which the buildings stood, to
Mrs. Brereton, of Provo, by warranty deed, absolute
on its face, and which contained no reservations what-
ever respecting the buildings. There was, however, an
understanding between them that the title to the build-
ings should remain in the grantor (plaintiff), who re-
mained in possession of them. Mrs. Brereton, the
grantee, testified as follows: "Q. What as to the
frame buildings which you say were afterwards de-
stroyed by fire; what arrangement was there between
you and Mr. Olmstead about the ownership of them?
A. Well, they belonged to Mr. Olmstead, and I had
nothing to do with the frame buildings. He had the
right to remove the frame buildings, if he saw fit, when-
ever he wanted to. Q. Did you then, or have you at
any time since the making and accepting of that deed,
claimed to own those houses, or any interest in them?
A. No, sir; I never took possession of the frame build-
ings, or had anything to do with them by way of con-
trol or otherwise, and never claimed any interest in
them at the time of the fire, or afterwards. Q. Mrs.
Brereton, in accepting the deed and taking possession
and control of this property, did you do so with the
understanding that the title to these two frame build-
ings remained in Mr. Olmstead, and without claiming
any interest in them yourself? A. Yes, sir." All
evidence introduced respecting the understanding be-
tween Mrs. Brereton and plaintiff to the effect that the
title to the frame buildings in question should remain
in plaintiff was objected to by defendant as incompe-
tent, which objections were overruled, to which ruling
defendant excepted. The issues of fact were submitted
to a jury, who returned a verdict in favor of plaintiff
for $625. Judgment was entered on the verdict for
said sum, and $46.70, costs of suit. Defendant ap-
pealed.

McCARTY, J., after stating the facts, delivered the opinion of the court.

Appellant contends that, as the warranty deed given by Olmstead to Mrs. Brereton for the land on which the buildings in question stood is silent as to any reservation by the grantor, Olmstead, of these structures, it was error for the court to admit evidence of an oral agreement between the parties that the title to the buildings was to remain in the grantor, Olmstead. It is contended that this evidence tended to, and did, vary the terms of a written instrument, and that defendant was prejudiced thereby. If this were an action between Olmstead and Mrs. Brereton, involving the title to the buildings in question, the rule sought to be invoked in this case, that parol evidence is inadmissible to vary the terms of a written instrument, would apply. In this case, however, the party seeking to invoke the rule has no interest whatever in the question of the ownership of the buildings destroyed, further than that, if the judgment is affirmed and it is compelled to pay the damages awarded, the judgment will protect it against any action Mrs. Brereton might bring to recover for the loss of these same buildings. If appellant must answer for the damages caused by the destruction of these buildings, it is immaterial to whom it shall answer, so long as it shall be held to answer but once. Nor is it evident that Mrs. Brereton could not, in the face of the record in this case, recover damages for the destruction of the buildings involved in this action. Smith v. Railway Co., 104 Iowa 147, 73 N. W. 581. Therefore the authorities cited by counsel for appellant, upon the question of the admissibility of evidence to contradict or vary the terms of a written instrument, have no application and do not control in a case of this kind, where the party seeking to invoke the rule is not a party to the deed, and has no interest in the ownership of the property, further than, as above stated, to protect itself against another action for the same cause.

Appellant requested the court to direct a verdict in its favor, "No cause of action." The refusal of the court to give this instruction is assigned as error. Appellant contends that the evidence introduced by it showed that the locomotive which it is claimed started the fire in question was equipped with the latest and best appliances for preventing the emission of sparks, and that it was run and managed with care and caution by a skillful engineer, and that this evidence completely overcame the prima facie case made by plaintiff, hence it was entitled to a direction of a verdict in its favor. According to the doctrine announced by this court in the case of Preece v. Rio Grande W. Ry. Co., 24 Utah 493, 496, 68 Pac. 413, and which is supported by the weight of authority, the starting of a fire by a locomotive is presumptively negligent, and the plaintiff, in order to make out a prima facie case, is only required to establish by competent proof the fact that the damage sought to be recovered was caused by a fire so started, and the burden is then upon the company operating the locomotive to show that it was provided with the necessary and proper appliances for preventing the emission of sparks and coals of fire, and that it was carefully operated. When this is done, plaintiff's prima facie case is rebutted and overcome, and, unless there is proof of other acts of negligence than those upon which plaintiff's prima facie case rests, defendant is entitled to a verdict. In the case referred to (Preece v. Ry. Co., supra), Mr. Justice BASKIN, speaking for the court, said: "Under the doctrine held by those cases, the question of negligence becomes a matter of law, and is excluded from the consideration of the jury only when the prima facie case of the plaintiff rests alone on the presumption of negligence which the law implies from the proof that the fire was started by the defendant's engine, and that presumption has been overcome by undisputed evidence of the defendant showing that the engine was provided with proper mechanical contrivances, and was carefully managed. Under

the authority of those cases, when there is other evidence of negligence than that upon which such prima facie case rests, the question is one for the jury, and not for the court. In the case at bar the plaintiff did not rely solely on the evidence which showed that the fire was started by defendant's engine, but introduced other evidence which tended to prove the defendant's alleged negligence. The case was therefore properly submitted to the jury." This same rule was followed in the case of Louisville R. R. Co. v. Lumber Co. (Ala.), 32 South. 745, 90 Am. St. Rep. 917. In that case the court said: "The principle is well established in this court, as a rule of evidence, that, in an action against a railroad company to recover damages resulting from fire alleged to have been caused by the negligent escape of sparks from a locomotive running on defendant's road, the burden is on plaintiff in the first instance to show that the fire was caused by sparks emitted from defendant's locomotive. . . . The mere communication of the fire from the railroad engine is of itself sufficient to raise a presumption of negligence against the company. With this prima facie proof of defendant's liability raised in plaintiff's favor, the burden is then devolved upon the defendant of showing that the engine alleged to have caused the fire was properly constructed or equipped with approved devices and appliances to prevent the escape of fire and sparks, was in good repair, and prudently managed and controlled, and, upon proof of these facts by defendant, the presumption arising from mere communication of fire from the engine is rebutted, and the plaintiff can not recover without making proof of other specific acts of negligence or want of care on defendant's part."

In addition to the evidence produced by respondent showing that the fire in question was started by appellant's locomotive, there is evidence in the record tending to show that the appliances with which the locomotive was equipped to prevent the escape of sparks and coals were out of repair. One witness tes-

tified, in part, as follows: "After the fire I investigated as to how it happened. . . . I saw cinders or sparks as big as the end of my thumb. . . . They were upon the hill, as far as the top of the bank—scattered all along the track. I gathered some of them up, and have them. This was immediately after the fire. . . . I picked up the largest ones. Cinders the size of these were immediately after the fire scattered along there from the right of way up to where the buildings stood. They looked like there had been a small hailstorm, except some were larger than others." This testimony, which was corroborated by other evidence, considered in connection with the fact that several other fires were started in that vicinity by this same engine, and the further fact that it was shown at the trial that many of these cinders would not pass through the netting of the kind and size used in the locomotive on the occasion referred to, tended to support the theory of the respondent that the netting used in the locomotive at the time the fire occurred was out of repair, and it was for the jury to determine whether or not, under all the facts and circumstances as disclosed by the evidence, the railroad company was negligent in the management of its engine, and whether the destruction of plaintiff's property was due to such negligence. Railway Company v. McCahill, 56 Ill. 28; Railway Co. v. Coats, 115 Fed. 452, 53 C. C. A. 382.

The judgment is affirmed, with costs.

BASKIN, C. J., and BARTCH, J., concur.