GLEASON v. SAN PEDRO, L. A. & S. L. R. Co.

No. 2971.   Decided April 4, 1917.   (164 Pac. 484.)

1. RAILROADS—FIRES—COMPLAINT—SUFFICIENCY.  A complaint, alleging plaintiff's ownership of property and defendant's operation of a steam railroad near plaintiff's property, which averred that while defendant was operating engines and cars it negligently allowed its engines to blow sparks of fire and coals upon plaintiff's property, which sparks ignited a stack of hay and straw on plaintiff's land, and that by reason of defendant's negligence such property was destroyed to his great damage, defendant being negligent in the operation of its engines in permitting sparks and coals to escape and carelessly failing to equip such engines with proper devices to control the escape of fire, is sufficient to state a cause of action.   (Page 406.)

2. APPEAL AND ERROR—REVIEW—HARMLESS ERROR.  In such case, where the record showed that defendant was in no way prejudiced by the general statements in the complaint, and as plaintiff in the very nature of things could not know the precise defect in the engine which allowed the escape of sparks, the overruling of a demurrer on the ground that the complaint was uncertain and ambiguous was harmless.   (Page 406.)

3. EVIDENCE—VALUE—ADMISSIBILITY.  While evidence of the original cost of constructing a building is, when confined to proper limits, admissible to show its value in an action for the destruction thereof, testimony by plaintiff that he valued the structure destroyed by fire at a certain amount is incompetent.[1]   (Page 408.)

4. APPEAL AND ERROR—MOTION TO STRIKE TESTIMONY—UNRESPONSIVE ANSWER.  Where testimony which was incompetent was also unresponsive to the question, defendant need not, such testimony having been elicited by plaintiff, move to strike the answer in order to preserve the point for review; plaintiff alone being entitled to object that the testimony was unresponsive.   (Page 409.)

5. RAILROADS—FIRES—EVIDENCE—ADMISSIBILITY.  While, in an action against a railroad company for firing property adjacent to its right of way, negligence may be inferred from the fact that the fire set out is from sparks emitted from an engine, nevertheless, evidence that an engine emitted sparks and that sparks and cinders were some time thereafter found as far from the

[1]*Smith* v. *Mine & S. S. Co.*, 32 Utah 21, 88 Pac. 683.

right of way as the property fired is inadmissible to show negligence in the given particular, for a railroad company is allowed to operate its locomotives by means of steam generated from fire, and the sparks found might not have been emitted at a time other than when the fire was set out.[1]  (Page 416.)

6.  RAILROADS—FIRES—ACTIONS—EVIDENCE—SUFFICIENCY. In an action against a railroad company for negligently firing plaintiff's property, evidence *held* sufficient to carry the case to the jury. (Page 420.)

McCARTY, J., dissenting.

Appeal from District Court, Third District; Hon. *Geo. G. Armstrong*, Judge.

Action by T. H. Gleason against the San Pedro, Los Angeles & Salt Lake Railroad Company.

Judgment for plaintiff.

Defendant appeals.

REVERSED and remanded.

*Dana T. Smith* for appellant.

*Hancock & Barnes* for respondent.

FRICK, C. J.

The plaintiff, after alleging the necessary matters of inducement and that he was the owner of certain      **1, 2** property and its value, further alleged:

"That on said date, to wit, about the 12th day of September, 1913, the defendants operated cars and engines propelled by steam over, along, and across its said railroad track near the belongings and property of the plaintiff aforesaid, and that while the said defendants were operating engines and cars over and along said tracks as aforesaid, the said defendants negligently and carelessly permitted and allowed its said engines to blow sparks of fire and coals of fire over and upon this plaintiff's property as aforesaid, and that said sparks of fire and coals as aforesaid being so negligently, carelessly,

[1]*Preece* v. *R. G. W. Ry. Co.*, 24 Utah 493, 68 Pac. 413; *Olmstead* v. *Railroad*, 27 Utah 519, 76 Pac. 557.

and wrongfully thrown over and upon the property of this plaintiff, did light near and upon the stacks of hay and straw of the plaintiff as aforesaid, and that by reason thereof, and by reason of the carelessness and negligence of the defendant in so operating its said engines and cars and in throwing said coals of fire upon plaintiff's property, the said hay and straw was set on fire, and all of said property was consumed and burned up and completely destroyed, to his great damage in the sum of $1,250. That the defendant was negligent and careless toward this plaintiff in operating said cars and engines along this plaintiff's property, and in permitting and allowing said coals of fire to escape from, and be blown from said engines over and upon the property of this plaintiff, and in negligently and carelessly failing to equip said engines with proper equipment and devices to control the said fire and coals and in failing to operate and conduct its said engines and operate the same so that said coals of fire would not light upon and ignite the property of this plaintiff, and in wrongfully permitting said coals of fire to light upon the property of the plaintiff as aforesaid.''

The defendant demurred to the complaint upon two grounds: (1) That the facts stated were not sufficient, etc.; and (2) that the complaint was uncertain and ambiguous, in that it could not be ascertained therefrom in what manner defendant was negligent, etc. The court overruled the demurrer, and the defendant now assigns the ruling as error.

While the complaint is not a model in stating the particulars in which it was claimed the defendant was negligent in causing the fire, yet, in actions of this kind, the plaintiff, in the very nature of things, may not know the precise defect in the engine which it is alleged caused the sparks or fire to escape therefrom, for the reason that the same is entirely under the control and management of the defendant. In view of that fact great precision cannot be required from the plaintiff in stating the precise defects in the engine or in the management thereof by the engineer, either or both of which may have caused the fire. Moreover, the record shows that the defendant was in no way prejudiced by the general statements in the complaint. Apparently it had no

more difficulty in presenting its defense than if the complaint had been made entirely specific in every particular. The complaint clearly stated a cause of action. It is clear, therefore, that no prejudicial error resulted from the court's ruling in that regard.

It is insisted that the court erred in admitting the testimony of the plaintiff, over defendant's objection, respecting the value of a certain shed which was destroyed by the fire in question. The record shows that counsel, in order to prove the value of the shed, propounded the following question to the plaintiff: "And what was the cost of the construction of the shed, if you recall?" Defendant's counsel objected to the question upon various grounds, among which, that "the proper foundation had not been laid," that the question did not call for the proper measure of damages and was not proper as "tending to show the value of the property at the time of the fire." The court sustained the objection, and plaintiff's counsel then proved by the witness that the shed was entirely destroyed, and then propounded the following question: "Now are you prepared to state what it would cost to replace that shed?" The witness answered "Yes, sir." Counsel asked, "What?" Defendant's counsel objected again for the same reasons before stated. The court overruled the objection, and defendant's counsel excepted to the ruling. The witness answered: "I valued it at $300." It was made to appear, however, that the shed had been constructed many years before the fire; that it was constructed by digging cedar posts into the ground, to which the boards constituting the walls were nailed, and that it had a straw-covered roof. We have been quite liberal in allowing evidence of value where, as here, property has been destroyed which had no market value at the time of its destruction. In such cases evidence of the actual value of the property destroyed is always permissible, and the actual value may be ascertained as pointed out in *Smith* v. *Mine & S. S. Co.*, 32 Utah 21, 88 Pac. 683. The plaintiff was either unwilling or unable to shed any light upon the cost of constructing the shed. Of course the original cost of construction, standing alone, would not be proper

evidence of its present value, and, if offered for that purpose, would be incompetent. *Chicago, etc., Ry. Co.* v. *Davis,* 78 Ill. App. 58. Yet, as a means of arriving at the actual value, if properly guarded by the court as pointed out in *Smith* v. *Mine & S. S. Co., supra,* such evidence is admissible. But neither this nor any other court, so far as we know, has ever gone to the length of permitting a plaintiff to prove the value of property by merely showing what he assumed it to be worth or what it was worth to him. To admit such evidence constitutes error. *Central Branch U. P. Ry. Co.* v. *Hotham,* 22 Kan. 41; *Railway Co.* v. *Jones,* 59 Ark. 105, 26 S. W. 595. The district court, therefore, erred in permitting the witness to answer the question.

Nor can it aid plaintiff that defendant's counsel did not move to strike the answer as not responsive. The answer was responsive; but, even though it had not been, defendant's counsel did not have the right to have it stricken if it was competent evidence, and the court ruled that it was. In *Merkle* v. *Bennington,* 58 Mich. 163, 24 N. W. 779, 55 Am. Rep. 666, Mr. Chief Justice Cooley states the rule upon the subject in the following words:

"The objection that an answer is not responsive is one to be made by the party who puts the question, not by his antagonist. If the answer is in itself proper evidence, the party who is examining the witness has a right to take and retain it if he chooses to do so. His doing this merely saves him the trouble of putting another question to draw it out."

To the same effect is *Dunahugh's Will,* 130 Iowa 692, 107 N. W. 625.

Indeed, the rule is elementary that the right to move to strike upon the ground that the answer is irresponsive is a shield in the hands of the examiner, and not a sword in the hands of his adversary.

The court, therefore, erred in permitting plaintiff to answer the question and of which error the appellant has a clear right to complain. The only question that is doubtful is whether, in view of the other evidence relating to the value of the shed, the error is of that character which requires a reversal of the judgment on that ground alone. In view of

the whole evidence we should hesitate to reverse the judgment upon that error alone, but for the reason that the judgment must be reversed on other grounds, we deem it only fair and just to the trial court to admonish it not to repeat the error on a retrial of the cause.

It is further contended that the court erred in admitting evidence on behalf of the plaintiff relative to the starting of fires and the casting out of live sparks by defendant's engines before and after the fire in question occurred. The evidence was admitted without objection, and the question arises as follows: The plaintiff did not identify the engine in his complaint, but, from the evidence offered in his behalf, it was made to appear that only one train had passed plaintiff's premises on the day the fire occurred which could have caused the fire. The engine was, however, not identified by plaintiff's evidence; that is, its number was not shown. When plaintiff rested his case defendant's counsel moved for a nonsuit, and, in connection therewith, also moved that all of the evidence respecting the setting of fires and the casting out of sparks by other engines be stricken from the record. The court refused to strike the evidence, and also denied the motion for a nonsuit. Error is now predicated on the court's ruling in refusing to strike the evidence.

In view that the evidence, in the first instance, was admitted without objection we are of the opinion that the question raised by counsel that the evidence of other fires which were caused by the defendant's engines before and after the fire in question is not fairly presented for review. In view that counsel failed to interpose timely objection, he cannot, as a matter of right, now insist that the evidence should have been stricken or that there was any error committed in admitting it. The proposition was, however, orally argued, and is briefed by counsel on both sides; and, inasmuch as we are compelled to remand the case for a new trial upon other grounds, we, under our statute, are required to pass upon the question as a guide to the trial court in retrying the case. The question, therefore, is, To what extent and under what circumstances, if at all, may evidence of the setting of fires and the throwing out of live sparks by other engines of the

defendant, in passing along certain premises where the fire is caused, be shown? Upon that question the courts are not in harmony. It is, however, only fair to state that many of the cases that are frequently cited as being either for or against the proposition can be easily distinguished on other grounds. There are, however, cases in which it is held that such evidence is not admissible unless the engine which caused the fire is identified. There are other cases in which it is held that such evidence is, under no circumstances, admissible unless and until it is shown that the engines which it is contended caused the other fires, or which emitted live sparks, were of the same kind and were substantially in the same condition and were managed as was the engine which it is contended caused the fire in controversy. See 1 Elliott, Ev. Sec. 188, and 3 Elliott on Railroads (2d Ed.), Sec. 1243a, where many cases are collated. One of the leading cases upon the question now under consideration is the case of *Sheldon* v. *H. R. R. Co.*, 14 N. Y. 218, 67 Am. Dec. 155. In that case the engine which it was contended caused the fire there in question was identified, but the court nevertheless held that it was proper to show that other engines operated by the defendant over its railroad adjacent to plaintiff's premises had caused fires at other times and places. The court held that after the plaintiff had excluded all other causes that probably might have caused the fires, such evidence was competent. That case was followed in the case of *Field* v. *New York Cent. R. R. Co.*, 32 N. Y. 339, and in *Webb* v. *Rome, etc. Ry. Co.*, 49 N. Y. 420, 10 Am. Rep. 389. Those cases, so far as we have been able to ascertain, have not been overruled or modified by the Court of Appeals of New York. Another early case holding the same doctrine is the case of *Illinois Cent. Ry. Co.* v. *McClelland*, 42 Ill. 358. A case frequently cited, and one of the best-reasoned cases upon the subject, is the case of *Longabaugh* v. *V. C. & T. Ry. Co.*, 9 Nev. 271, erroneously cited by the United States Supreme Court in a case hereinafter referred to as being in 4 Nevada. In the Nevada case Mr. Justice Hawley, with his usual vigor, goes into the question thoroughly, and concludes that such evidence is competent. Another case that is very frequently

cited is the case of *Grand Trunk R. R. Co.* v. *Richardson*, 91 U. S. 454, 23 L. Ed. 356. Mr. Justice Strong, in speaking for the court in that case, in the course of the opinion, said:

"The question, therefore, is whether it [the evidence] tended in any degree to show that the burning of the bridge, and the consequent destruction of the plaintiffs' property, were caused by any of the defendant's locomotives. The question has often been considered by the courts in this country and in England; and such evidence has, we think, been generally held admissible, as tending to prove the possibility, and a consequent probability, that some locomotive caused the fire, and as tending to show a negligent habit of the officers and agents of the railroad company."

To the same effect are *Northern Pac. Ry. Co.* v. *Lewis*, 51 Fed. 658, 2 C. C. A. 446; *Chicago, etc. R. Co.* v. *Gilbert*, 52 Fed. 711, 3 C. C. A. 264; *Thatcher* v. *Maine Cent. Ry. Co.*, 85 Me. 502, 27 Atl. 519. In the last case cited the Supreme Judicial Court of Maine states the doctrine in the following words:

"They [defendant's counsel] claim that the admission of the evidence from several witnesses, tending to show fires communicated by the locomotives used on the defendant's road at different times about the same time that the plaintiff's lumber was destroyed, and in the same vicinity, were erroneous; that it should be confined to the particular locomotive which passed over the road just before the fire, and which it is claimed communicated it. We think its competency, where the issue is whether the fire was communicated from a locomotive, is clearly established by courts of the highest authority. It tends to show the capacity of the inanimate thing to set fires along the road; and, when a fire is discovered soon after a locomotive has passed, and there is no evidence tending to show that it might have been caused in some other way, it authorizes the inference that it was caused by the locomotive. *Railroad Co.* v. *Richardson*, 91 U. S. 454 [23 L. Ed. 356], and cases cited; *Crocker* v. *McGregor*, 76 Me. 284 [49 Am. Rep. 611]; *Loring* v. *Railroad Co.*, 131 Mass. 469."

The question is also discussed by the author in 1 Jones, Com. Ev. (Blue Book) Sec. 166C, where the author arrives at the conclusion that such evidence is competent. He says:

"There is practically no conflict remaining on the point that evidence of other fires by other locomotives is relevant on the issues of negligence and the cause of the fire complained of, and this, too,

without identification of the engines. Whatever little contrary opinion existed has been entirely occluded since the opinion of Mr. Justice Strong [*Grand Trunk Ry. Co.* v. *Richardson, supra*]. In that case testimony was introduced by the plaintiff that some of the company's locomotives scattered fire at various times during the same summer before the fire, when passing the sawmill, without showing that either of the two engines which the plaintiff claimed to have communicated the fire in question was among the number, and also without showing that either was similar in construction, state of repair, or management to those which scattered fire as aforesaid. It was claimed that in order to have rendered the testimony admissible, it should have been confined to the same engines, operated in the same manner and in the same state of repair, or to other engines proved to have been of the same construction, used in the same manner and in the same state of repair."

The author then proceeds to state what is decided in the case at some length, and concludes as follows:

"After the plaintiff has refuted other probable causes, evidence that engines were so managed near the location of the fire as to be likely to set on fire objects not more remote than the property burned not only renders it probable that the fire was set by the defendant's engine, but raises an inference that there was something improper in the construction or management of the engine which caused the fire. But the presumption in such case is only prima facie, not conclusive, and is, of course, subject to rebuttal by competent evidence."

In 1 Wigmore, Ev. Sec. 455, the subject is also thoroughly considered, and the author of that excellent work on Evidence comes to the conclusion that such evidence is proper. He quotes from one English and from one American case. In view that the excerpts quoted by the author cover the precise question now under consideration we take the liberty of appending the excerpts in full. The quotation from the English case is as follows:

"1846, *Piggot* v. *R. Co.*, 3 C. B. 229 (admitting evidence of sparks on other occasions from the defendant's locomotives): Tindal, C. J.: '[The evidence was admissible] to ascertain whether or not sparks such as those described could be emitted, from the engines used by the company, to the distance represented.' Maule, J.: 'The evidence objected to was that other engines used on the defendant's line, of the same description as that which was said to have caused the injury here, had, on various other occasions, been seen to throw

particles of ignited matter to a distance from the line as great or greater than the spot in question. The matter in issue was whether or not the plaintiff's property had been destroyed by fire proceeding from the defendant's engine, and involved in that issue was the question whether or not the fire could have been so caused. The evidence was offered for the purpose of showing that it could, and for that purpose it was clearly material and admissible.' "

The quotation from the American case is as follows:

"1897, Savage, J., in *Dunning* v. *R. Co.*, 91 Me. 87, 30 Atl. 352 [64 Am. St. Rep. 208]; 'It is admissible as "tending to prove the possibility, and a consequent probability, that some locomotive caused the fire"—language from *Railway Co.* v. *Richardson*, which has often been cited with approval. To show a possibility is the first logical step. That other engines of the same company, under the same general management passing over the same track, at the same grade, at about the same time, and surrounded by the same physical conditions, have scattered sparks or dropped coals so as to cause fires, appeals legitimately to the mind as showing that it was possible for the engine in question to do likewise. The testimony is illustrative of the character of a locomotive as such, with respect to the emission of sparks or the dropping of coals. If the possibility be proved, other facts and circumstances may lead to a probability, and then to satisfactory proof.' "

The author then proceeds as follows:

"But the foregoing inference is based on the assumption that the engine in question is one of a class, and what is true of the class is true of the individual engine upon this assumption only. Not all engines are of the same construction or in the same condition with reference to a capacity to emit sparks, and therefore the instancing of such a capacity in some of them does not evidence such a capacity in another unless they belong to the same class with reference to construction, etc.; in short, unless the principle of substantial similarity of condition (ante, Section 442) is fulfilled. Upon this all agree; but the question arises whether the detailed showing of similarity of construction should be required in advance from the plaintiff, or whether the similarity should be assumed in certain cases, leaving it to the defendant, on the principle of explanation (ante, Section 449), to show, if he can, that the construction or condition was not similar. It seems wiser, where the other engines belong to the same owner or run over the same line, to assume this similarity: First, because it is a probable one; and, next, because it is comparatively difficult for a plaintiff, though comparatively easy for a defendant, to produce the proper evidence. This was long ago pointed out in one of the earlier cases."

Much more could be said, and still other cases could be cited, but if we undertook to refer to all of the cases and attempted to review them, we would be required to write a treatise upon the subject.

On the other hand, there are also a large number of cases which hold that such evidence is admissible only when the engine which it is contended caused the fire in controversy is not identified. Indeed, Elliott contends that the weight of authority supports the doctrine of the latter cases, while Mr. Jones and other writers insist that the great weight of authority supports the views expressed by Mr. Wigmore and by the Supreme Court of the United States in the Richardson Case. In the cases referred to by Mr. Elliott it is held that where it is known what engine caused the fire, such evidence is not admissible, at least not until it be first shown that the engine casting out the live sparks and which caused other fires was substantially in the same condition and was operated' in like manner as was the engine which it is contended caused the fire in controversy. In other words, that the conditions and circumstance surrounding all of the engines must be shown to have been substantially the same. One of the leading cases upon that question is the case of *Gibbons* v. *Wisconsin Valley Ry. Co.*, 58 Wis. 335, 17 N. W. 132. That case refers to the case of *Grand Trunk Ry. Co.* v. *Richardson, supra,* and criticizes the doctrine there announced.

The California Supreme Court holds to that doctrine, and it has several times been held that such evidence is admissible where the engine that it is contended caused the fire is not identified and not known by the plaintiff. See *Henry* v. *Southern Pac. Ry. Co.*, 50 Cal. 176. The foregoing case was followed in *Butcher* v. *Railroad Co.*, 67 Cal. 525, 8 Pac. 174, and in *Steele* v. *Pacific Coast Ry.*, 74 Cal. 331, 15 Pac. 851, although in the last case cited it is not made to appear that the decision was based upon the distinction pointed out in the two previous ones. See, also, *Ireland* v. *Cincinnati, W. & M. Ry. Co.*, 79 Mich. 163, 44 N. W. 426. There are additional cases which could be cited that hold the same doctrine but the foregoing sufficiently illustrate the theory of those cases.

After a careful consideration of all of the cases, those that

we have cited and many others, and what is said by Mr. Jones
and by Mr. Wigmore in their words on Evidence, we are con-
strained to hold that where a plaintiff has produced evidence
which tends to exclude all other agencies which could have
caused the fire in question, it is proper for him to show that
other engines operated by the defendant on its line of railroad
passing plaintiff's premises have cast out live sparks and
have caused other fires in the vicinity within a reasonable
time both before and after the fire in question as tending to
prove the "possibility and consequent probability," as Mr.
Justice STRONG put it, that the fire was caused by defend-
ant's engine. Such evidence is competent to show that engines
do cause fires, and where live sparks are thrown out in un-
usual or in large quantities of large or unusual sizes and are
carried a considerable distance from the railroad track, the
evidence may be admitted as tending to show that the engines
were not properly equipped with proper spark arresters, or
were out of repair, or were improperly operated by the engi-
neer and fireman.

It is asserted, however, that all that it is necessary to prove
in this jurisdiction is that the fire was caused by an en-
gine, and from that fact it may be inferred that the fire
was negligently set. *Preece* v. *R. G. W. Ry. Co.,* 24
Utah, 493, 68 Pac. 413; *Olmstead* v. *Railroad,* 27 Utah, 519, 76
Pac. 557. The question, however, always is, How is the fact
established that an engine caused the fire in question? While
in the opinion in the Preece Case the evidence respecting the
setting of the fire is not set forth yet an examination of the
record in that case shows an abundance of evidence from
which the inference could be deduced that the engine there
in question set the fire. The same is true of the Olmstead
Case. In both of those cases a number of witnesses testified
that they saw the engine of the defendant cast out great and
unusual quantities of live sparks before or about the time the
fires were set; in the Olmstead Case at the very time the fire
occurred. Indeed, in both of those cases the evidence is strong
and convincing that the engines there in question caused the
fires, and from the evidence there disclosed it was quite
proper, not only to deduce an inference that the fires were

caused by the engines in question, but the inference was also proper that they were negligently caused. But in neither of those cases, nor in any other case emanating from a court where the question is not covered by statute, has it been held that all that is necessary to prove is that an engine passed certain premises, and that a fire was discovered on those premises a short time thereafter. It is universally recognized that there must be some evidence from which it may legitimately be inferred that the fire in question was caused by the passing engine and not by some other agency. To establish the probability that the engine in question caused the fire, the plaintiff may show that the engine, at the time the fire was set, cast out live sparks, or that it set fire to the dry grasses, or otherwise; and to strengthen the probability that engines do set fires, it may also show that other engines of the defendant did the same thing within a reasonable time both before and after the fire in question. When those facts are shown the jury may infer that the fire in question was caused by the engine. Conceding the statement, however, that all the plaintiff must prove is that the fire was caused by one of defendant's engines, while correct in itself, is, nevertheless, meaningless without an explanation of how that fact may be established. Of course, if the fire is seen to pass from the engine to the object which is set on fire, the proof is complete without further evidence. When the facts hereinbefore suggested are made to appear, the jury may also infer that the fire was caused through the negligence of the defendant, either in carelessly operating the engine or in not providing the same with proper appliances to prevent the casting out of live cinders. It is important to keep in mind, however, that railroad companies are by law permitted to operate their engines by means of fire and in that way generate the necessary power. It is therefore lawful for them to operate engines by fire. It is also possible in rare instances that engines may cause fires without negligence. It is necessary, therefore, to prove: (1) That the fire in question was caused by an engine of the defendant; and (2) that it was negligently caused. As before stated, negligence may be inferred if it be shown that the

engine caused the fire, but until that is shown by the exclusion of other agencies, there can be no inference of negligence.

While, for the reasons hereinafter stated, the evidence in this case is sufficient to sustain a finding that the fire in question was caused by defendant's engine, yet, in view that the fire originated a distance of 450 feet by actual measurement from the track, the court erred in admitting the evidence now to be discussed. It is contended that the court erred in permitting the plaintiff to show that he and other members of his household, after the fire in question, had picked from the ground for some distance from the railroad track, and as far distant therefrom as the shed was situated, a large quantity of dead cinders of various sizes. Some of those dead cinders, the evidence showed, were picked up a few days after the fire some a week or two weeks thereafter, and the time that others were so picked up is not shown. The cinders, over the objection of the defendant, were, by the court, admitted in evidence. We cannot see how those dead cinders proved, or tended to prove, or establish, any fact or facts in issue. One can understand that where an engine in actual operation is seen to cast out large volumes of live sparks, the engine, in all probability, is not in good repair, or is not properly equipped with proper spark arresters, or is not properly managed. But merely to pick up dead cinders from the ground along the railroad track when no one knows when or under what conditions or circumstances they were thrown out is no evidence, except that at some time some engine had cast out cinders either alive or dead. Of course, if the cinders were dead when cast out, they were harmless and a menace to no one. The difficulty, however, with such evidence is that it establishes nothing that is relevant to any issue. It may well be that an engine may have passed the premises in question at some time when it was out of repair, or grossly mismanaged. Again, an engine may, at some time, have been recklessly operated, or an inferior quality of coal may have been used, or an extra amount of draft may have been applied, and thus a large quantity of cinders may have been thrown out. When a plaintiff is permitted to show that the defendant's engines in ordinary weather while being operated cast out large and unusual

amounts of live sparks, it is as far as he should be. permitted to go. To permit him to produce in evidence dead cinders that he may have picked up that were found along the track, and that may have been cast out by some engine at a time unknown, and under conditions and circumstances unknown, is going entirely beyond the bounds of reason, and can have no other effect than to unduly influence a jury or layman to return a verdict against the defendant in a case where no one ever saw a live spark or fire thrown out from any engine. Jurors will not stop to consider that sparks or coals of fire are dangerous only when alive. They will, at once, assume that the dead cinders must have been alive when cast out, regardless of whether that was the fact or not. Again, where the evidence is limited to the casting out of live sparks seen by witnesses, such witnesses may be cross-examined, and all the conditions under which they were cast out may thus be developed, while if dead cinders picked up along the line of railroad are to be admitted in evidence, no cross-examination showing the conditions under which they were emitted and thrown out is possible. The Court of Appeals of New York has been quite liberal in permitting a plaintiff to produce indirect evidence with regard to the setting of fires, yet that court makes it clear in the case of *Collins* v. *N. Y. Cent. & H. R. R. Co.,* 109 N. Y. 243, 16 N. E. 50, that evidence of the character we have just discussed is not admissible. See, also, 33 Cyc. 379, 380. Indeed, the question is so clear on principle that decided cases seem wholly unnecessary. We are clearly of the opinion that the court went too far in admitting in evidence the dead cinders that were found on the ground along the railroad track and on plaintiff's premises. The court gave the plaintiff all the latitude that is allowed by any court in permitting him to produce evidence tending to prove that engines of the defendant, both before and after the fire, in passing his premises, had emitted live sparks which were carried a considerable distance from the track, and as far as, and beyond, the shed which was destroyed by fire, and, further, in permitting him to prove that other fires had been started by some of defendant's engines in the vicinity of

plaintiff's premises within a reasonable time before and after the fire in question.

It is also urged that the evidence is insufficient to sustain the finding of the jury that the fire in question was caused by defendant's engine. In view that the case must be retried, it could subserve no good purpose for us to review the evidence. While on the face of the record the great weight of the evidence seems to be in favor of the defendant, yet there is some substantial evidence in the record, if believed by the jury, to justify a finding that the fire was caused by defendant's engine, which, according to plaintiff's witness, passed his premises only a short space of time before the fire was discovered on the straw roof of plaintiff's shed. At least four witnesses testified that they saw the shed roof on fire only a short time—some say ten minutes—after the train had passed the premises. Some of the witnesses also testified that the train labored hard in passing plaintiff's premises, and that it emitted large volumes of smoke from the smokestack. The fire started in the daytime near the middle of the day. We are powerless to pass upon the weight or effect of the evidence, and, in our judgment, the plaintiff produced at least some substantial evidence in support of the finding of the jury. This assignment must therefore fail.

For the reasons stated the judgment is reversed, and the cause is remanded to the district court of Salt Lake county, with directions to grant a new trial and to proceed with the case in accordance with the views herein expressed. Appellant to recover costs.

CORFMAN, J.

I concur. I do not concur, however, in the conclusion arrived at by Mr. Chief Justice FRICK, that it was proper to show that other engines at other times emitted sparks and live cinders, when the particular engine it is claimed set out the fire was identified.

In the case at bar the undisputed testimony of all the witnesses, both for the plaintiff and the defendant, was that only one freight engine passed the plaintiff's premises in the forenoon of the day of the fire in question. True, there is a sharp

conflict in the testimony as to the time in the forenoon that
the engine passed, the witnesses for plaintiff fixing the time at
about eleven o'clock a. m., shortly before the fire was dis-
covered, the defendant's witnesses fixing the time not later
than nine twenty a. m., but not a single witness for either
party suggested the possibility of there have been more
than the one engine, identified by defendant's witnesses at
the trial as defendant's engine No. 3633. The uncontradicted
testimony is that this engine was in good condition, equipped
with and had in use the best spark arrester that could be ob-
tained for arresting sparks and live cinders, and that the
engine was operated in the usual customary manner by experi-
enced and efficient trainmen exercising due care in its manage-
ment.

It seems to me that under such conditions and circumstances
the admission of testimony to show that other engines belong-
ing to defendant had on other occasions, when operated by
different trainmen, caused fires in other places, would, in this
jurisdiction, be highly prejudicial to a fair trial, and would
not in the slightest degree tend to show that the fire in ques-
tion was negligently caused by the particular engine identified,
but would only tend to befog the real issue to be determined
by court or jury, whether or not the defendant was negligent
in the maintenance and operation of the identified engine
claimed to have set out the fire in question. In the Utah juris-
diction, in this class of cases, once the engine is identified,
the real and only issue to be determined is, was the engine
defective or lacking in its equipment or parts, or so negli-
gently or incompetently managed and operated by the defend-
ant as to have been the proximate cause of the fire in con-
troversy?

It may be conceded that oftentimes engines, no matter how
perfect in equipment nor how skillfully and carefully operated
do cause fires; but it is only in those jurisdictions where the
statute fixes a liability, regardless of the condition, equipment,
and management of the identified engine, that evidence of
other engines setting fires, before or after, becomes relevant
to the issue. Not only a long line of authorities, but many of
the cases, if not all, herein cited and commented on by Mr.

Chief Justice FRICK, seem to bear me out in reaching this conclusion, as will be seen. Savage, J., in the case of *Dunning* v. *Cent. R. R. Co.*, 91 Me. 87, 30 Atl. 352, 64 Am. St. Rep. 208, says:

"The plaintiff's claim is based simply upon the statute (R. S. c. 51, Section 64), which provides that, 'When a building or other property is injured by fire communicated by a locomotive engine, the corporation using it is responsible for such injury.' No question of negligence on the part of the defendant is involved."

Then again, in the case of *Grand Trunk R. R. Co.* v. *Richardson et al.*, 91 U. S. 454, 23 L. Ed. 356, plaintiff's right to recover was predicated on the Vermont statute fixing the liability of a railroad corporation for fires communicated by its locomotive engines, and here Mr. Justice STRONG, in his opinion, says:

"The third assignment of error is that the plaintiffs were allowed to prove, notwithstanding objection by the defendant, that, at various times during the same summer before the fire occurred, some of the ·defendant's locomotives scattered fire when going past the mill and bridge, *without showing that either of those which the plaintiffs claimed communicated the fire was among the number.* * * * The particular engines were not identified.*" (Italics mine.)

In *Sheldon* v. *Hudson River R. Co.*, 14 N. Y. 218, 67 Am. Dec. 155, the engine was identified, but the question there was as to whether the engine was properly constructed, and testimony was offered to show that not only the engine in question, but the other engines of the defendant, were lacking in proper equipment. In *Field* v. *Railroad Co.*, 32 N. Y. 348, the engine was not identified; and in *Webb* v. *Railroad Co.*, 49 N. Y. 420, 10 Am. Rep. 389, again the question was one of proper equipment. In *N. P. Ry. Co.* v. *Lewis*, 51 Fed. 658, 2 C. C. A. 446, the particular engine was not identified, and in *Chicago, etc., R. Co.* v. *Gilbert*, 52 Fed. 711, 3 C. C. A. 264, the engine was not identified, and the action was brought under the provisions of a Minnesota statute.

While the question is not at all a determining one in the decision reached by Mr. Chief Justice FRICK in the case at bar, I do not want to here commit myself to what I think would be a too liberal rule in permitting evidence to be intro-

duced concerning other engines than the one identified in this class of cases. As to the grounds assigned by Mr. Chief Justice FRICK, for the reversal of the judgment, I concur.

McCARTY, J. (dissenting).

I am of the opinion that there is no prejudicial error assigned, and that the judgment should be affirmed. The jury assessed plaintiff's damagès at $500, and rendered a verdict for that amount, with interest thereon from the date of the fire. The evidence, without conflict, shows that the fire in question destroyed property belonging to plaintiff as follows: Fifteen rods of corral fence described as "a good board fence, cedar posts with two rails along the posts and then boards," 4½ feet high, of the market value of $75; one set of harness of the market value of $30; one wagon jack of the market value of $6; three loads of straw of the market value of $9; three pitchforks of the market value of $2.25; one surrey tongue of the market value of $10; two pieces of garden hose $1; twenty-six tons of hay, which plaintiff testified was of the value of $12 per ton. The total value of the property mentioned, according to plaintiff's evidence, was $445.25, which is only $54.75 less than the amount of the verdict.

To meet the positive evidence of plaintiff regarding the market value of the hay, defendant produced a witness who testified as follows: "If I remember right, I think it was about $10 a ton." To prove the value of the shed counsel for plaintiff propounded this question: "Q. Now are you prepared to state what it would cost you to replace that shed? A. Yes, sir." The principal objection made to this question was "that the cost of reconstructing the shed is not the proper measure of damages." The court, addressing counsel for respondent: "What do you claim is the measure of damages, Mr. Smith?" Mr. Smith: "The value of the shed in the condition it was at the time it was destroyed." The Court: "He may answer the question." The Witness: "I value it at $300." It seems that the answer was given by the witness to meet the views of counsel, making the objection, as to the true measure of damages. I do not think the answer is susceptible of being construed to mean that the value the witness put

on the shed was other than his judgment of its true or actual value. The answer, "I value it at $300" is equivalent to saying, "The value of it was $300." This, I submit, is proper evidence to prove the value of farm buildings and structures. 3d Chamberlain, Modern Evidence, Section 2128.

Assuming for the sake of argument, but not conceding, that the court, by admitting this kind of evidence, permitted, as is suggested, "plaintiff to prove the value of the property by merely showing what he assumed it to be worth or what it was worth to him," he, nevertheless, on cross-examination, gave proper evidence tending to show the value of the shed which in part is as follows:

"Q. That shed, you say, was built out of lumber? A. Yes, sir. Q. How long had it been built? A. I can't tell exactly. I judge that shed, part of it, perhaps, had stood there 10 years, and maybe more, and part of it had been built at a more recent date. * * * Q. You stated that that shed was worth $300? A. Yes, sir. * * * Q. When you say $300 that is simply a rough estimate? A. Well, it isn't so rough either. A person can easily tell what it would take to build a good barn 80 feet long and 14 feet wide, a pretty good lumber roof on it, and a good straw top on that. A person can tell something about what it would cost. It isn't such a rough estimate."

He also stated on cross-examination that:

The shed "was mostly boarded up. * * * It was simply rough lumber; * * * just ordinary $40 a thousand lumber."

It will therefore be observed that whatever was lacking, if anything, in plaintiff's evidence in chief tending to prove the value of the shed was supplied by his evidence given on cross-examination. According to the evidence of respondent's witness on this point there was at least 1,400 feet of lumber used in the construction of this shed besides a number of cedar posts for uprights, and sufficient quaking asp poles for the roof, and the evidence, without dispute, shows that the lumber was worth $40 per thousand. In other words, according to the undisputed evidence, the value of the lumber destroyed was, at least, of the value of $56. This amount,

when added to the value of the other property herein mentioned, which the evidence shows was $445.25, makes the sum total in excess of the amount of the verdict. Moreover, defendant produced evidence of the most positive character showing that the value of the shed in the condition it was when destroyed was $75. And the jury evidently accepted this evidence of the value of the shed, otherwise the verdict would, in all probability, have been in excess of $500. Few cases of this kind are brought to this court in which evidence of value to support the verdict is clearer or of a more conclusive character than is the evidence in this case.

In this jurisdiction the rule of law, in cases of this kind, is that all plaintiff is required to do to make out a prima facie case of negligence is to show by competent proof that the damage sought to be recovered was caused by a fire started by a locomotive. When evidence is introduced having sufficient probative force to support a finding by the jury that the fire was so started, the burden is then on the company operating the locomotive to show that it was provided with spark arresters or other proper appliances for preventing the emission of sparks and coals of fire, and that it was operated in an ordinarily careful way. *Preece* v. *R. G. W. Ry. Co.,* 24 Utah, 493, 68 Pac. 413; *Olmstead* v. *O. S. L. Ry. Co.,* 27 Utah, 515, 76 Pac. 557.

In the case at bar plaintiff testified that along about the date of the fire, as he was standing in the doorway of his house at night, one of defendant's locomotives, as it passed by his premises, emitted sparks that arose in the air and passed over his house to a point on his premises beyond where the fire in question was started, and then dropped to the ground before the fire in them was extinguished; that at another time he was in his yard near the shed or stable when a locomotive passed, emitting sparks that passed over his haystacks and descended to the ground before they were extinguished; that on another occasion from five to fifteen minutes after a locomotive passed his premises he saw a "fire spring up" in a nearby pasture at a point twenty rods from the railroad tracks.

W. Warnick, a witness for plaintiff, testified that at the

time of the fire he was residing, and for four years prior thereto had resided, at Pleasant Grove, Utah, near defendant's railroad track, and "about one-half block from plaintiff's premises"; that on different occasions during these four years he had seen defendant's locomotives, as they passed his residence, emit sparks that were carried about one hundred yards from the railroad track before they were extinguished. He further testified that he was at home on the day the fire in question occurred; that somewhere around "eleven o'clock in the forenoon" he saw a train pass, and in about twenty minutes thereafter his attention was called to the fire by a neighbor; that when he first saw the fire it was on top of the haystack. "It was burning from the top."

Mary Gleason, a sister of plaintiff, and, by occupation, a school teacher, testified that at the time the fire occurred she was living at plaintiff's home in Pleasant Grove, Utah; "that along about the time of the fire" she had, on several occasions, observed defendant's locomotives, as they passed plaintiff's premises, emit "cinders and sparks" which were carried by the wind to a point on the premises beyond the place where the fire was started. The witness further testified that she was at home during the forenoon of September 12, 1912, the day of the fire; that "a little after eleven" a freight train passed the premises along defendant's railroad track; that "the engine was puffing hard;" that about fifteen minutes after the train passed a man going by in an automobile told her that the barn was on fire; that when she "went out the fire was just on one end of the stack on top."

Two other witnesses for plaintiff testified that they were residing in the immediate vicinity of plaintiff's premises at the time the fire occurred; that they saw a freight train pass along defendant's railroad track about eleven o'clock in the forenoon of September 12, 1913, and that, in about fifteen or twenty minutes after the train passed plaintiff's premises they saw the fire, which was burning on top of the stack, and that in their judgment it had been burning about fifteen minutes. Another witness for plaintiff testified to substantially the same facts as testified to by the witnesses mentioned respecting the hour when the freight train passed plaintiff's

premises and the time of the discovery of the fire after the train had gone by.

The evidence thus introduced by plaintiff, respecting the distance that sparks and live cinders are sometimes carried by the wind after they leave a locomotive before the fire and heat in them is extinguished, the time the fire was discovered with reference to the time the train passed the premises, and the place, the top of the haystack, where the fire was started, was unquestionably sufficient to support a finding by the jury that sparks and heated cinders from the freight train started the fire. To meet plaintiff's testimony tending to show that the fire was caused by sparks and cinders from the engine, which established a prima facie case of negligence, defendant introduced evidence tending to show that the only freight train that passed by plaintiff's premises between eight o'clock a. m. and twelve o'clock noon on September 12, 1913, was a train drawn by engine No. 2633; that this train passed plaintiff's premises at nine fifteen a. m. on that day. Evidence was also introduced tending to show that engine No. 2633 was equipped with proper, modern, practical, up-to-date appliances for controlling and arresting sparks and cinders and that these appliances and equipment were, on that date, in good condition, and that the engine was managed and operated with due care.

The evidence respecting the condition of engine 2633, and the appliances with which it was equipped for arresting sparks and cinders, and the way it was operated on the day of the fire, is not, in any respect, denied or disputed. In view that this evidence is undisputed, and that the property destroyed by the fire was situated not less than 350 feet from the railroad track, counsel for defendant contends with much earnestness that defendant's request for a directed verdict should have been granted. There would be much force to this contention were it not for the fact that there appears to be irreconcilable conflict in the evidence regarding the number of freight trains that passed plaintiff's premises on the forenoon of the day of the fire. The evidence on behalf of defendant is of the most certain and positive character that engine No. 2633 passed plaintiff's premises on the day of the fire at nine fifteen a. m.

Five witnesses for plaintiff, however, testified positively that a freight train passed the premises about eleven o'clock that morning, and that the fire was discovered within fifteen or twenty minutes after the train had gone by. The question of whether a freight train passed plaintiff's premises on the morning of the fire, after engine No. 2633 had gone by, was for the jury and not for the court to determine. There is evidence tending to show that two passenger trains passed plaintiff's premises about nine o'clock on the morning of the fire. On that point Mary Gleason, a witness for plaintiff, testified on cross-examination as follows:

"Q. And had you seen any other trains that morning? A. Yes, sir; I think so. There were passenger trains. Q. Going in what direction? A. I think there were two, one going toward Salt Lake, and one going the other way. Q. And about what time did they pass the house? A. Somewhere about 9 o'clock."

The question of whether sparks and heated or live cinders from a locomotive will or will not start fires from 350 to 450 feet away from the point where they leave the smokestack of the engine was also a question of fact for the jury, and not one of law for the court. On first impression it might seem, as counsel contend, to be a physical impossibility for sparks and cinders, after being carried through the air that distance, to drop on a stack of hay and ignite it. Evidence, however, of the most positive character was offered by plaintiff tending to show that fires may, under those conditions, be started. To rebut this evidence defendant offered evidence of a negative character only, that is, its witnesses who testified on this point stated that they had never seen or known sparks and cinders from locomotives to start fires a distance of more than 125 feet from the railroad track.

The cinders that were picked up soon after the fire in the vicinity of plaintiff's premises and along the railroad track, I think, were properly admitted in evidence. The evidence shows that some of the largest of these cinders were picked up 300 feet from the railroad track. And plaintiff testified that on different occasions when standing in his yard while locomtives were passing his premises, cinders, equal in size

to the largest of those in evidence, escaped from the engines and dropped on his premises; that he has seen cinders the size of his finger ''thrown'', when they left the smokestack, ''375 feet from the track.'' While the record shows that it would be a physical impossibility for cinders the size of some of those in evidence to escape from a smokestack of a locomotive equipped with a spark arrester of the same kind and grade which the undisputed evidence shows engine No. 2633 was equipped with on the day of the fire in question, they, nevertheless, tended to show that other engines passed over and along this railroad track, equipped with spark arresters having a mesh of a size sufficient to permit these cinders to escape. It is not claimed that the evidence respecting these cinders is insufficient to justify an inference or conclusion that they escaped from engines that were operated on defendant's railroad track. A jury might well find that the operating of an engine equipped with a spark arrester through which cinders of the size of some of those admitted in evidence could escape is negligence.

As I have pointed out, there is a sharp conflict in the evidence as to whether one or two freight trains passed plaintiff's premises on the morning of the fire. If the jury accepted as true the evidence for plaintiff on this point, which they had a right to do, it necessarily follows that they must have found that the fire was not started by engine No. 2633, but was started by some other engine passing over defendant's railroad track, which defendant has failed to show was equipped with proper and safe appliances for arresting sparks and cinders.