Shiras, District Judge.
On the 23d of May, 1889, a steam flouring mill and barn, with their contents, the property of the defendants in error, situated in the village of Adrian, in the state of Minnesota, in immediate proximity to a line of railway owned and operated by the plaintiff in error, were destroyed by fire. The owners of the burned property brought this action against the railway company for the purpose of recovering the damages caused by the destruction ’of their property, alleging that the company had negligently placed and suffered to accumulate, upon the right of way and land of the company adjoining the property of the defendants in error, combustible material composed of dry grass, weeds, rubbish, and the like, and that on said 23d day of May, 1889, the company ran a locomotive by said property which was not properly equipped nor properly handled to prevent the escape of fire, and as a consequence thereof fire was communicated to the combustible material upon the right of way, whence it spread to the mill and barn adjoining, causing their destruction. The company in its answer denied the several acts of negligence alleged against it, and averred that the fire and consequent destruction of the property were due to the negligent and careless manner in which the mill was managed, claiming that the fire escaped from the mill, and not from the locomotive of the company. Upon these issues the case was tried before the court and jury, the trial resulting in a verdict and judgment in favor of the plaintiffs below, the damages being assessed at $15,878.33. To reverse the judgment the railway company brings the case to this court by a writ of error.
It is stated in the brief of counsel for the plaintiff in error that “the important question in this ease raised by the first ten assignments of error is whether the case disclosed by the record can be properly and fairly distinguished from the case of Railway Co. v. Richardson, 91 U. S. 454.” The assignments of error thus referred to are based upon the admission, *713 over the objection of the company, of the testimony of several witnesses that on different occasions within some weeks prior to May 23, 1891, fire had escaped from the engines of the company in the immediate vicinity of the property subsequently destroyed. In the case just cited the supreme court held such evidence to be admissible, “as tending to prove the possibility, and a consequent probability, that some locomotive caused the fire, and as tending to show a negligent habit of the officers and agents of the railroad company.”
We do not think counsel for plaintiff in error have successfully distinguished the facts of the two cases. Counsel cite and comment at length on the cases of Gibbons v. Railroad Co., 58 Wis. 335, 17 N. W. Rep. 132; Railroad Co. v. Stranahan, 79 Pa. St. 405; Allard v. Railroad Co., (Wis.) 40 N. W. Rep. 685; Ireland v. Railroad Co., (Mich.) 44 N. W. Rep. 426; and Coale v. Railroad Co., 60 Mo. 227,—as authorities establishing the distinction that evidence showing the scattering of fire by the engines of the company at other times and places is only admissible when the identity of the particular engine supposed to have set the fire in the case on trial is unknown. We must not, in the consideration of this question, lose sight of the issues involved. In the case at bar it was not admitted by the company that the fire was caused by sparks escaping from a particular engine, in which event the query would be as to the condition of that particular engine and the mode in which it was handled. On the contrary, the parties were at issue as to the origin of the fire, the plaintiffs claiming that it was due to fire escaping from some one of the engines of the company, and the defendant that it was due to fire escaping from the mill itself. Upon this issue it would certainly be open to the defendant to prove that the mill was so run and managed by the plaintiffs that the fire frequently escaped therefrom, and caused the burning of combustible matter in the vicinity of the mills, because such evidence would tend to support the claim of the defendant that the fire was started by sparks or live coals coming from the mill. In like manner it was, upon this issue of the origin of the fire, open to plaintiffs to prove that the engines of the company did permit the escape of sparks, causing other fires, as a fact tending to show that this particular fire thus originated.
This action was brought under the provisions of section 60, c. 34, Gen. St. Minn., which enacts that:
“All railroad companies or corporations operating or running cars or steam engines over roads in this state shall be liable to any party aggrieved for all damage caused by Are being scattered or thrown from said cars or engines, without the owner or owners of the property so damaged being required to show defect in their engines, or negligence on the part of their employes; but the fact of such Are being scattered or thrown shall be construed by all courts having jurisdiction as prima facie evidence of such negligence or defect, * * * ”
Under the provisions of this section, to obtain the benefit of the prima fade case therein provided for, it is necessary for the plaintiffs to prove that the conflagration complained of resulted from fire scattered or thrown *714 from the cars of the railway company, and, when the company denies that the given fire so originated, then, upon this issue of the origin of the fire, it is competent to prove generally that the engines used by the defendant company do scatter or throw out fire, because, in the language of the supreme court in the Richardson Case, supra, such evidence tends to prove “the possibility, and consequent probability, that some locomotive caused the fire.” See, also, Sheldon v. Railway Co., 14 N. Y. 218; Ross v. Railroad Co., 6 Allen, 87; Longabaugh v. Railroad Co., 9 Nev. 271.
Furthermore, the fact that fire did escape from time to time from the engines used upon the company’s railway, in the vicinity of the property which was destroyed, was a fact proper for the consideration of the jury in determining whether the company was or not negligent in allowing combustible material to accumulate on the right of way, which was one of the issues in the case. If fire did in fact from time to time escape from the engines of the company, then the act of placing or allowing the accumulation of combustible matter upon the right of way would have to be considered, in connection with the probability of the escape of fire, in determining the issue of negligence in this particular. It would not be negligence to allow the accumulatipn of combustible material, unless there was danger of fire being communicated thereto, and it was competent to prove this danger by showing that in fact fire did from time to time escape from the engines used upon the company’s road. Not only so, but evidence of the setting out of other fires in this vicinity from sparks or coals coming from the locomotive engines would tend to show knowledge on part of the railway company of the need that existed for preventing the accumulation of inflammable materials, and would thus directly bear upon the question whether the company had exercised all the vigilance and foresight which the circumstances demanded of it. We conclude, therefore, that the evidence objected to was competent under the issues in this cause, and it was not error to admit the same.
The next contention of counsel for the company is that “the Court, in effect, told the jury that the right of way of the railway must be kept clear from all material that would facilitate the spread of fire, in case a fire should start; the jury were, in effect, instructed, as a matter of law, that under all circumstances and conditions, and at all times, it was the imperative and absolute duty of the railway company to keep its right of way entirely free from combustible material of every kind and nature,”—and that in so ruling the court erred. The difficulty with this contention of counsel is that it has no sufficient support in the record. It is true that the court did say “the right of way of a railway company ought to be kept clear from all materials that would facilitate the spread of fire, in case the fire should start,” but this sentence must be read in connection with its context in determining its true meaning. It is not permissible to take out a single sentence from the charge as a ground of error, and to maintain that it incorrectly states the law because it does not contain all the limitations or qualifications necessary for the accu *715 rate statement of the particular proposition to which it relates. It will be borne in mind that one of the charges of negligence against the company was that its employes had placed upon the right of way, in close proximity to the property of plaintiffs, a quantity of chaff, straw, and other refuse from the yards of the company, and it was in regard to this issue that the sentence excepted to was used.
The charge of the court on this branch of the case was as follows:
“It is well known, and several railroad men have testified to it, that, using even the best appliances, coals or sparks will escape from an engine, and do damage to property adjacent to the right of way. And such being the case, the railroad company should keep its right of way free from all combustible material that might facilitate the spread of fire, and it is proper evidence for you to take into consideration if you are satisfied that the plaintiffs, by their witnesses, have proved that these inflammable materials were spread over this right of way, in determining whether such act shows negligence on the part of the defendant company. Of course it is not conclusive, but it is to be taken into consideration by the jury as tending to show a careless mode of conduct in carrying on its business. If you are satisfied the fire was communicated from this engine, (which, as I said before, is the vital point,) then it is to be taken into consideration by you if this material was put over there, in determining whether or not it was an act of negligence on the part of the defendant. This ease is peculiarly one presenting questions of fact. The law in regard to it is quite simple and settled with regard to the duty of both parties. It is charged by plaintiffs that the defendant was negligent, and, on the other hand, the defendant charges the plaintiffs with being negligent themselves; that is, guilty of contributory negligence. The testis: What would an ordinarily prudent person have done under similar circumstances? Ho better test can be applied, for all that either of these parties was required to exercise was ordinary care with regard to the management of its business.”
Clearly the court did not charge, as a matter of law, that it was, under all circumstances, the duty of the railway company to keep its right of way entirely free from combustible material. The jury were instructed to determine from the evidence whether the inflammable materials had been spread over the right of way by the employes of the company, and, if they so found, that such fact would be proper evidence to be considered in determining whether such act constituted negligence on part of the company, it being further stated that, if the jury found that the company, through its employes, had covered the right of way with inflammable material, the fact would not be conclusive evidence of negligence, but was only a circumstance to be considered by the jury as tending to show a careless mode of carrying on the business of the railway. Certainly, the company had no just ground for exception to this part of the charge, for it was as favorable to it as it could possibly expect.
The last assignment of error discussed in the brief of counsel for plaintiff in error is to the effect that the court should not have permitted one of the defendants in error to testify that the mill belonged to himself and his coplaintiff. It is said that “it is elementary law that title to real property cannot be proved by parol. Title to such property can only be obtained or passed in certain prescribed ways, and in accord *716 anee with positive rules of statutory law.” Where an action is brought for the direct purpose of establishing title to realty, and where the question of ownership of the title is the issue in the case, and the judgment rendered in the cause will become record evidence of the title, then it may well be that the best .evidence of title should be adduced. What this best evidence may be depends upon the facts of each case. In some cases it may consist of long adverse possession, provable only by parol. The rules of evidence applicable to issues framed to settle and adjudicate the title to realty are not necessarily applicable to cases of the kind now under consideration. Under the issues actually presented to the court and jury in this cause, all that was necessary for the plaintiffs to show was a prima facie right of ownership of the property destroyed, and this could be done by parol testimony. If the company or any other person had made the issue that the plaintiffs below were not the owners of the property, and were not therefore entitled to recover damages for its destruction, and had introduced evidence tending to show title in some other party, it might then have become necessary for the plaintiffs to have submitted other evidence in support of their right. Until this was done, they could rest upon the prima facie evidence of title afforded by proof of possession of the property at the time of its destruction. It was certainly proper to accompany the evidence, showing possession of the property in the plaintiffs, with testimony showing that plaintiffs claimed to be the owners of the property, because such testimony would show that the possession was held under claim of title, thus making out a clear prima facie case upon this question, and' this was the effect of the testimony excepted to. Finding no error in the record, it follows that the judgment must be and is affirmed, at cost of plaintiff in error.