## KELLY v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. November 1, 1921.)

No. 1864.

1. **Receiving stolen goods ⬅9 (1)—Whether defendant bought and transported stolen car with knowledge of theft held a jury question.**

Evidence *held* sufficient to make a case for the jury as to whether defendant bought and transported an automobile knowing the same to have been stolen, in violation of Act Cong. Oct. 29, 1919, known as the National Motor Vehicle Theft Act.

2. **Commerce ⬅33—Stolen car, driven across state line, held transported in "interstate commerce."**

One who purchased an automobile with knowledge that it had been stolen, and drove it across a state line under its own power for his own purposes, or for the purpose of an ultimate future sale of it, was guilty of transporting such automobile in interstate commerce, within Act Cong. Oct. 29, 1919, known as the National Motor Vehicle Theft Act.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

3. **Commerce ⬅3—Congress may prohibit interstate transportation of stolen motor vehicles.**

Congress may prohibit the interstate transportation of motor vehicles known to have been stolen.

4. **Criminal law ⬅822 (1)—Charge to be judged as a whole.**

The charge in a criminal case is to be judged as a whole, and not by some incidental statement which, taken by itself, might be misleading.

5. **Criminal law ⬅829 (12)—Erroneous refusal to charge as to possession of stolen goods held cured by given charge.**

If it was error, in a prosecution for transporting in interstate commerce a stolen automobile. knowing the same to have been stolen, in violation of Act Cong. Oct. 29, 1919, to refuse to charge that "the mere possession of stolen goods, without proof that the accused received them knowing them to have been stolen, raises no presumption that the goods were stolen property, and is insufficient to establish guilty knowledge," it was harmless, where the fact that the car had been stolen was not in dispute, and the court instructed that the real question for the jury to determine was whether, under all those circumstances, testified to by defendant and others, the defendant must have known that the automobile was stolen.

6. **Criminal law ⬅829 (12)—Refusal of instruction as to proof of guilty knowledge held harmless, in view of charge given.**

In a prosecution for transporting in interstate commerce an automobile known to have been stolen, in violation of Act Cong. Oct. 29, 1919, if it was error to refuse to charge "that mere inadequacy of price is insufficient proof of guilty knowledge," it was harmless, where the refusal was coupled with the statement, "I charge you, however, that inadequacy of price may be one of the circumstances from which the jury may infer guilty knowledge," which properly defined the bearing and limited the testimony relating to the price paid by accused for the car.

7. **Criminal law ⬅1170 (1)—Exclusion of testimony as to hostility of witness to accused held harmless.**

Accused cannot complain of exclusion of testimony offered to show that witness was influenced by personal hostility to the defendant, where such witness testified to nothing which was the subject of dispute.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**8. Criminal law ⊜⊶1170(3)—Exclusion of evidence cured by subsequent admission.**

Improper exclusion of testimony is cured by its subsequent admission.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

C. L. Kelly was convicted of transporting in interstate commerce a stolen automobile, knowing it to have been stolen, and brings error. Affirmed.

Frank A. Miller, of Hartsville, S. C., for plaintiff in error.

J. Waties Waring, Asst. U. S. Atty., of Charleston, S. C. (Francis H. Weston, U. S. Atty., of Columbia, S. C., on brief), for the United States.

Before KNAPP and WOODS, Circuit Judges. and WATKINS, District Judge.

KNAPP, Circuit Judge. Plaintiff in error, herein referred to as defendant, was convicted of transporting in interstate commerce a certain automobile, knowing the same to have been stolen, in violation of the Act of October 29, 1919 (41 Stat. 325), known as the National Motor Vehicle Theft Act, the third section of which reads as follows:

"Sec. 3. That whoever shall transport or cause to be transported in interstate or foreign commerce a motor vehicle, knowing the same to have been stolen, shall be punished by a fine of not more than $5,000 or by imprisonment for not more than five years, or both."

Not denying that the automobile described in the indictment was stolen from its owner, and admitting that he got possession of it soon afterwards at Columbia, S. C., and took it at once into the state of Georgia, defendant here urges as grounds for reversal, among other things: (1) That there is no evidence that he knew the car had been stolen; and (2) no evidence that it was transported in interstate commerce. Bearing upon these contentions the following facts appear, as the jury were warranted in finding:

The car in question, a Buick, 1919 model, said by the owner to be worth about $1,600, was stolen from him at Hartsville, S. C., where he lived, and near which defendant also resided, on the evening of Monday, March 29, 1920. The loss was promptly reported to the chief of police, who telephoned a description of the car to surrounding towns and made other efforts to trace it. The next day advertisements sent by wire were inserted in several daily papers. On the following Friday the car was located in Canton, Ga., to which place it had been taken by defendant and a relative of his, named Skinner. Two or three days later the owner went to Canton with the chief of police and recovered it. He found that the old tag had been removed and a new tag put on, which, as he afterwards learned, had been issued to defendant at Columbia on the 30th of March. On his return home he swore out a warrant for defendant and Skinner, who in the meantime had been arrested at Knoxville, Tenn., and they were brought back to

⊜⊶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Hartsville by the sheriff. For some reason their prosecution under the state law was abandoned, and instead defendant was indicted and tried under the federal statute. Further testimony for the government was to the effect that on their way to Canton, at the little station of Lebanon, Ga., where they spent a night, they gave the names of Smith and Jones, and that defendant there tried to sell the car for $1,300, but refused a check for $1,000 to be dated 10 days ahead, to allow him to furnish a reference.

The defendant testified in substance, as did Skinner, that they came to Columbia in the forenoon of Wednesday, March 31st, intending to go on that day by rail to Louisville, Ky., where defendant owned or had an interest in a traveling show business, in which Skinner was to be employed; that while walking around, waiting for the train, they came to a garage which stood back some 20 or 30 feet from the street and on which was the sign, "We buy and sell second-hand cars;" that defendant thereupon proposed to buy a second-hand car and motor across the country to Louisville; that on or near the street in front of the garage was a negro working on a car, which he said he had come there to sell; that he asked $700 for it, but after some bargaining let defendant have it for $550; that the car was very muddy, the top badly torn, one or more tires flat, and other parts needing adjustment; that they proceeded to put it in running condition and started out with it that afternoon. It was the stolen car.

The negro, who called himself Charles Brown, was a stranger to both defendant and Skinner. Neither had seen him before. According to their own admissions he was not asked, and did not tell, when or where or from whom he obtained the car, whether it was new or used when he got it, what he had been doing with it, how it came to be in such a condition, why he wanted to sell it, or how he happened to be in Columbia at the time. No inquiry was made at the garage, and no other effort made to ascertain whether this unknown negro was the owner of the car which he was so anxious to sell. In explanation of the tag number, defendant said that some days before he had lost the tag on a Hudson car which he owned, and had obtained a duplicate, which was at the hotel with his baggage, and that he put this duplicate on the Buick in place of the tag which the negro removed when he bought it.

[1] Without reference to other incidents of the purchase and trip to Canton, it seems that on arrival there they took the car to a garage to be washed, and went on foot to a boarding house to arrange for accommodations; that while away for this purpose they were told by a boy that the car had been seized as a stolen car, and that they would be arrested if they went back; that thereupon they got the boy to take them in a Ford car to a railroad station some 12 miles out in the country, where they spent the night; and that next morning they boarded the train for Knoxville, at which place they were arrested and put in jail. The reason given by them for leaving Canton in that way was that they desired to avoid arrest in a town where they were strangers and could not get bail. They also said they intended to return home at once to meet any charge that might be brought against them, and that they took the Knoxville train to do so, although, as the govern-

ment points out, the much shorter route was in the opposite direction. We need not comment upon this evidence. In our judgment it was clearly sufficient to make a case for the jury to determine whether defendant bought and transported the car in question, "knowing the same to have been stolen," and the trial court, therefore, did not err in refusing to direct a verdict in his favor for lack of proof of guilty knowledge.

[2] Was the car transported "in interstate commerce"? That the act under review was intended to cover such a case as is here disclosed seems to us not doubtful, and the learned judge below charged the jury as follows:

"I charge you further, gentlemen, that the term 'interstate commerce,' as used in the act of Congress mentioned, includes transportation from one state to another. It may be otherwise said that interstate commerce, in the signification intended by Congress in the act under which the defendant is indicted, is that the motor vehicle must have been moved or transported from one state into another for the purpose either of sale or for the purpose of transporting persons or articles of personal property from one state to another; and I charge you, under the facts in this case, that if you find Kelly and his companion took this vehicle, and by driving it, moving it through the use of its own power, caused themselves to be transported by this vehicle from South Carolina to Georgia, either for the purpose of an ultimate future sale of it, or for the purpose of using the vehicle to be transported through Georgia, to Louisville, in the state of Kentucky, for the purposes of their own business, using it as a means of transportation for themselves for the performance of business, as they testified, that that would be a transportation in interstate commerce, as intended by that statute."

[3] We are of opinion that this instruction is sanctioned by repeated decisions of the Supreme Court construing and upholding analogous statutes. To penalize the transportation of a given article is in effect to prohibit its transportation. And if the Congress may prohibit the interstate transportation of lottery tickets, Champion v. Ames, 188 U. S. 321, 23 Sup. Ct. 321, 47 L. Ed. 492; of impure foods and drugs, Hipolite Egg Co. v. United States, 220 U. S. 45, 31 Sup. Ct. 364, 55 L. Ed. 364; of intoxicating liquors into a prohibition state, even for personal use, Clark Distilling Co. v. Western Maryland Ry. Co., 242 U. S. 311, 37 Sup. Ct. 180, 61 L. Ed. 326, L. R. A. 1917B, 1218, Ann. Cas. 1917B, 845; and of women and girls for an immoral, though noncommercial purpose, Caminetti v. United States, 242 U. S. 470, 37 Sup. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168—we perceive no reason, constitutional or other, why it may not in like manner prohibit the interstate transportation of motor vehicles known to have been stolen. As is said in Hammer v. Dagenhart, 247 U. S. 251, 271, 38 Sup. Ct. 529, 531 (62 L. Ed. 1101, 3 A. L. R. 649, Ann. Cas. 1918E, 724), reviewing the cases cited:

"In each of these instances the use of interstate transportation was necessary to the accomplishment of harmful results. In other words, although the power over interstate transportation was to regulate, that could only be accomplished by prohibiting the use of the facilities of interstate commerce to effect the evil intended."

So in this case. The "harmful results," obvious and frequently occurring, of transporting stolen motor vehicles from one state to an-

other, can be prevented only by prohibiting altogether their interstate transportation, and such prohibition is therefore a valid exercise of the power invested in the Congress. And it follows that if the defendant had guilty knowledge that the car in question had been stolen, as the jury must have found, he had no right to transport it at all, either within or without the state in which it was purchased, and for the wrongful act of taking it into another state, using it for the transportation thereto of himself and Skinner, he incurred the penalties of the federal statute, irrespective of what he intended to do with it in that state or elsewhere.

[4] The remaining assignments of error, based upon exceptions to other instructions and the refusal of requested instructions, require but brief discussion. It is argued that the jury were told in substance that the test of guilty knowledge was what the "average man" might have believed in the circumstances disclosed, and not what the defendant in fact believed; but it seems clear to us that the instructions cannot reasonably be so construed and could not have been so understood. The charge is to be judged as a whole, and not by some incidental statement which, taken by itself, might be misleading. "Whether the instructions could have produced misconception in the minds of the jury," says the Supreme Court in Seaboard Air Line v. Padgett, 236 U. S. 668, 672, 35 Sup. Ct. 481, 482 (59 L. Ed. 777), "is not to be ascertained by merely considering isolated statements, but by taking into view all the instructions given and the tendencies of the proof in the case to which they could possibly be applied."

In this case, not only was the unmistakable import of the entire charge to the effect that the defendant could not be convicted unless he knew that the car had been stolen, but the jury were repeatedly and explicitly so instructed. For example, at the conclusion of his general charge, in which he had recited the principal incidents connected with the purchase of the car, the learned judge said:

"I charge you as a matter of law that it is for you to say whether, under all the circumstances, all the testimony in the case, it indicates to your mind to the exclusion of any other reasonable inference that there was guilty knowledge on defendant's part; that he knew the car must have been stolen. If you come to the conclusion, beyond a reasonable doubt, that he knew it was stolen, you will find him guilty; otherwise, not guilty."

And in refusing a requested instruction, "in manner and form as asked," he again said:

"As to the rest of this request, I charge the jury here that the prosecution must show beyond a reasonable doubt that the defendant at that time, in their opinion, under all the circumstances of the case, knew that the automobile had been stolen."

Without further quotation or comment, it is enough to say that in our judgment the contention here considered is wholly refuted "by taking into view all the instructions given and the tendencies of the proof in the case to which they could possibly be applied."

[5] To the request to charge that "the mere possession of stolen goods, without proof that the accused received them knowing them to

have been stolen, raises no presumption that the goods were stolen property and is insufficient to establish guilty knowledge," the court said:

"I refuse that as not applicable to the case. If the prosecution had simply proved the possession and then stopped, and asked for a verdict based simply upon the presumption arising from mere proof of possession, the question of its propriety would have arisen. In this case, I charge you, gentlemen, that there have been proven, both in the testimony for the prosecution and for the defense, the circumstances under which he acquired possession; and it is for you to say whether under all those circumstances he must have known that it must have been stolen."

Even if it be conceded that defendant was entitled to the instruction asked for, the error of refusing it was rendered harmless by the reason assigned therefor and the accompanying statement of the real question for the jury to determine. The fact that the car had been stolen was not in dispute.

[6] So, too, of the request to charge "that mere inadequacy of price is insufficient proof of guilty knowledge." Granted the correctness of the proposition, and even the technical error of refusing it in the form presented, we are nevertheless of opinion that no misleading inference was possible, because the refusal was coupled with and modified by the statement, "I charge you, however, that inadequacy of price may be one of the circumstances from which the jury may infer guilty knowledge," which properly defined the bearing and limited the application of the testimony relating to the price paid for the car. State v. Houston, 29 S. C. 108, 6 S. E. 943.

[7, 8] Something is sought to be made of the exclusion, when first offered, of testimony designed to show that Redfern, the chief of police, was influenced by personal hostility to the defendant; but the sufficient answer to the contention is that Redfern testified to nothing which was the subject of dispute, and therefore his attitude of mind, assuming it to have been biased, was a wholly irrelevant matter. Aside from this, however, if in any view of the case this testimony was improperly rejected, at the time it was first offered, the error was fully cured by its subsequent admission.

The other assignments of error raise no question which calls for discussion.

Affirmed.