## WHITAKER v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. May 11, 1925.)

No. 4345.

1. **Criminal law** ⊜ˌ13—Statute making it crime to transport stolen motor vehicles in interstate commerce held constitutional.

National Motor Vehicle Theft Act, § 3 (Comp. St. Ann. Supp. 1923, § 10418d), making it crime to transport or cause to be transported in interstate commerce a motor vehicle knowing it to have been stolen, is constitutional.

2. **Receiving stolen goods** ⊜ˌ7(1)—Indictment for transporting stolen motor vehicle need not allege owner's name, value of automobile, or that it was stolen.

Under National Motor Vehicle Theft Act, § 3 (Comp. St. Ann. Supp. 1923, § 10418d), indictment for transporting stolen motor vehicle need not allege owner's name, value of automobile, or directly that it was stolen.

3. **Receiving stolen goods** ⊜ˌ9(2)—Instruction defining "commerce" and "interstate commerce" within National Motor Vehicle Theft Act held correct.

Instruction that "commerce," within National Motor Vehicle Theft Act, § 3 (Comp. St. Ann. Supp. 1923, § 10418d), means passing to and fro, and that "interstate commerce" means the transportation or causing to be moved from one state, territory, or District of Columbia, to another state, territory, or District of Columbia, and that vehicle is transported when it is shipped by common carrier or moved on its own wheels, held correct, and it was not error to refuse to instruct that mere transportation of automobile from state to state without view to pecuniary gain does not constitute transportation in interstate commerce.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Commerce; Interstate Commerce.]

**4. Receiving stolen goods ⊜1—Driving stolen automobile from state to state is in itself "interstate commerce."**

Driving stolen automobile from one state to another on its own power is in itself "interstate commerce," within National Motor Vehicle Theft Act, § 3 (Comp. St. Ann. Supp. 1923, § 10418d), notwithstanding it carries no freight or passengers for hire.

**5. Criminal law ⊜1170½(3)—Accused held not prejudiced by question asked of, but not answered by, codefendant testifying for government as to other crimes committed by codefendant.**

Where accused's codefendant testifying for government was asked whether he committed any crimes other than those recounted, but accused's objection thereto was sustained and jury instructed to imply nothing from question, *held*, that impression produced was favorable rather than prejudicial to accused, since evidence of other crimes committed by witness would tend to discredit him and would not incriminate accused.

**6. Criminal law ⊜1170½(3)—Accused held not prejudiced by question asked of, but unanswered by, codefendant testifying for government.**

In prosecution under National Motor Vehicle Theft Act, § 3 (Comp. St. Ann. Supp. 1923, § 10418d), for transporting stolen automobile in interstate commerce, accused was not prejudiced by question asked of, but not answered by, his codefendant testifying for government as to whether codefendant took part in burning certain automobile and whether he knew he was committing crime, where court admonished jury to imply nothing from question.

**7. Criminal law ⊜1169(2)—Testimony imputing additional crimes to accused held not prejudicial, where evidence of his guilt strong.**

In prosecution under National Motor Vehicle Theft Act, § 3 (Comp. St. Ann. Supp. 1923, § 10418d), for transporting stolen automobile, testimony of accused's codefendant, from which jury could imply that accused had illicit relations with unmarried woman of party, which court struck out and instructed jury to disregard, *held* not prejudicial, where evidence of accused's guilt of offense charged was strong.

In Error to the District Court of the United States for the Southern Division of the Southern District of California; William P. James, Judge.

Norman T. Whitaker was convicted of knowingly, willfully, unlawfully, and feloniously transporting a stolen automobile in interstate commerce, and he brings error. Affirmed.

McDonald & Thompson, of Los Angeles, Cal. (E. M. Van Meter, of Washington, D. C., and Chas. L. Smyth, of Philadelphia, Pa., of counsel), for plaintiff in error.

Samuel W. McNabb, U. S. Atty., and John R. Layng, Sp. Asst. U. S. Atty., both of Los Angeles, Cal.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge. The plaintiff in error and five others were indicted for violation of section 3 of the Act of Congress of October 29, 1919, known as the National Motor Vehicle Theft Act (Comp. St. Ann. Supp. 1923, § 10418d), and were charged with knowingly, willfully, unlawfully, and feloniously transporting and causing to be transported a certain motor vehicle (describing the same), in interstate commerce from Ocean City, N. J., to Los Angeles, Cal., "they, and each of them, then and there well knowing the said motor vehicle to have been stolen, being not then and there the property of the said defendants or either of them." The indictment further alleged that there was no consent of the owner of the motor to take, transport, or cause the same to be transported from Ocean City to Los Angeles. The plaintiff in error was found guilty as charged.

[1, 2] The contention that the act under which the conviction was had is unconstitutional is met and answered by the recent decision of the Supreme Court in Rae Brooks v. United States, 45 S. Ct. 345, 69 L. Ed. ——. The contention that the indictment was insufficient, in that it failed to allege the ownership of the motor vehicle or the value thereof and contained no direct averment that the vehicle was stolen, is answered by the recent decision of this court in the case of Foster v. United States, 4 F.(2d) 107, where it was held that such matters need not be set forth in the indictment; that the indictment is sufficient if it expressly and distinctly alleges every element entering into the offense as set forth in the statute and contains a specific description of the vehicle alleged to have been stolen.

[3, 4] Exception was taken to an instruction to the jury concerning the provisions of the statute, in which it was said: "Commerce means a passing to and fro; interstate commerce means the transportation (that is, causing to be moved) from one state, territory or the District of Columbia, to another state, territory or the District of Columbia. A vehicle is transported when it is shipped by common carrier or moved on its own wheels." We are unable to see wherein the instruction is contrary to the meaning of "commerce" and "interstate commerce" as defined by the Supreme Court in Gibbons v.

Ogden, 9 Wheat. 1, 6 L. Ed. 23, and other decisions of that court which are cited. In Hoke v. United States, 227 U. S. 308, 320, 33 S. Ct. 281, 283 (57 L. Ed. 523, 43 L. R. A. [N. S.] 906, Ann. Cas. 1913E, 905), it was said: "Commerce among the states, we have said, consists of intercourse and traffic between their citizens and includes the transportation of persons and property." There can be no question but that the driving of a stolen automobile from one state to another on its own power is in itself interstate commerce notwithstanding that it carries no freight or passengers for hire. Whitaker v. Hitt, 52 App. D. C. 149, 285 F. 797, 27 A. L. R. 951; Kelly v. United States (C. C. A.) 277 F. 405. There was no error, therefore, in the instruction as given; nor was it error to refuse to instruct as requested that the mere transportation of an automobile from state to state without a view to financial or pecuniary gain or benefit does not constitute a transportation in interstate commerce as intended in the use of that term in the Dyer Act (Comp. St. Ann. Supp. 1923, §§ 10418b–10418f).

[5, 6] The assignments of error principally relied upon are directed against the admission of certain testimony. The plaintiff in error, together with Harry Drexel and four young women, started out to go from Pennsylvania to Los Angeles in two automobiles, one of which was the property of the plaintiff in error, and the other was the automobile which was alleged to have been stolen. On the trial Drexel testified for the government. There was evidence of the changing of numbers on the stolen automobile and various devices to prevent detection of the theft by means of forged bills of sale made at different points on the journey westward. Drexel was asked: "Have you committed any crimes other than those which are recounted?" To that question the court sustained an objection and instructed the jury that they should imply nothing from the question. It is urged that notwithstanding the instruction of the court, the impression produced by the question was prejudicial to the plaintiff in error. To us it seems plain that the impression produced must have been favorable to the plaintiff in error rather than prejudicial. If Drexel committed crimes other than those which he had detailed, evidence of that fact would tend to discredit him as a witness; but we cannot see that it would tend to incriminate the plaintiff in error. Nor do we think that there was reversible error in the fact that Drexel was asked whether at any time he took part in the burning of an automobile, and "Did you

know at the time you burned Franklin No. 2 automobile that you were committing a crime?" Neither question was answered, and the court admonished the jury that they were to imply nothing from them.

[7] Again, Drexel testified that at the various places where they lodged he and one of the unmarried women of the party registered as Mr. and Mrs. Drexel and as man and wife occupied the same room. He was, then asked: "Did any other persons of the party, not married, occupy the same relationship?" An objection to that question was sustained. Later Drexel was asked: "Were you the only member of the party who had the same relation toward a woman as you did?" to which he answered: "No, sir." On the objection and motion of counsel for the plaintiff in error, the answer was struck out and the jury were instructed to disregard it. It is urged that notwithstanding the instruction to disregard it, the answer of the witness was highly prejudicial to the plaintiff in error, since the jury must necessarily have inferred he was the member of the party referred to as also having illicit relations with a woman of the party. But the evidence of the guilt of the plaintiff in error of the offense charged in the indictment is so strong and convincing that we cannot see how the imputation of one or more additional crimes could have affected the verdict. Testifying in his own behalf, he admitted that while in Illinois, on the way, he prepared and signed a forged bill of sale purporting to transfer the stolen automobile from one C. H. Thomas, a fictitious person, to Harry E. Drexel, to which bill of sale the plaintiff in error signed the name C. H. Thomas as owner and assignor. He admitted also that after arriving in California he assisted in preparing a fictitious bill of sale from Drexel to Bruce Chesser, the name which Drexel had then assumed. He admitted further that at that time he suspected that the car had been stolen by Drexel, and that Drexel soon thereafter told him that such was the fact, and that thereafter he urged Drexel to sell the automobile in order to raise funds with which to pay a debt which Drexel owed him. He testified also that after he returned to Washington he received several letters and telegrams from Drexel, who remained in California, that he sent Drexel $25 and wired, "Suggest accepting twelve fifty as we both need cash," and concluded with the caution, "Very careful about communicating with me." Again he telegraphed: "By all means don't have trouble with Ben. Everything O. K. unless he interferes. Better put in winter storage if still unsold." The "Ben" so referred to, as

the plaintiff in error admitted, was the stolen automobile. All these admissions, and others tending to incriminate the plaintiff in error, were received in evidence in addition to the testimony of Drexel which directly implicated the plaintiff in error with the theft of the automobile and with the alteration of the number of the engine and the change of the plates.

We find no error.

The judgment is affirmed.