**ABRAHAM v. UNITED STATES (two cases.)***

(Circuit Court of Appeals, Eighth Circuit.
November 9, 1926.)

Nos. 6892, 6893.

**1. Automobiles ☞351—Indictment charging transportation of stolen automobile need not state particulars of theft or time when it occurred (National Motor Vehicle Theft Act [Comp. St. §§ 10418b–10418f]).**

Indictment, under National Motor Vehicle Theft Act (Comp. St. §§ 10418b–10418f), for transportation of automobile in interstate commerce, knowing it to have been stolen, need not state particulars of original theft or time when it occurred.

**2. Automobiles ☞352—On indictment charging transportation of stolen automobile, government must prove theft from owner and accused's knowledge of theft (National Motor Vehicle Theft Act [Comp. St. §§ 10418b–10418f]).**

Where indictment, under National Motor Vehicle Theft Act (Comp. St. §§ 10418b–10418f), for transportation of stolen automobile in interstate commerce, named alleged owner of automobile, government was required to prove that it was stolen from such owner as alleged, and that accused knew it to be stolen when it was so transported.

**3. Larceny ☞3(2)—Animus furandi and intent to deprive owner permanently of his property at time of taking is necessary to "larceny" (Comp. St. Okl. 1921, § 2101).**

To constitute "larceny," under Comp. St. Okl. 1921, § 2101, there must be animus furandi at time of taking, and an intent to deprive owner permanently of his property.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Larceny.]

**4. Automobiles ☞355(12)—Evidence in prosecution for transporting stolen automobile held insufficient to establish larceny (National Motor Vehicle Theft Act [Comp. St. §§ 10418b–10418f; Comp. St. Okl. 1921, § 2101]).**

In prosecution, under National Motor Vehicle Theft Act (Comp. St. §§ 10418b–10418f), for transporting stolen automobile in interstate commerce, evidence not showing taker's intent to deprive owner of his property as required by Comp. St. Okl. 1921, § 2101, held insufficient to establish larceny.

**5. Larceny ☞3(3)—Taker of property under bona fide claim of title in another is not guilty of larceny.**

One taking property under bona fide claim of title in another is not guilty of larceny.

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Herbert Abraham was convicted of transporting and causing to be transported an automobile in interstate commerce knowing it

*Rehearing denied January 4, 1927.

to have been stolen, and he sues out two writs of error. Reversed, and new trial awarded.

Edgar S. Vaught, of Oklahoma City, Okl. (Richard A. Billups, Jean H. Everest, and Phil D. Brewer, all of Oklahoma City, Okl., on the brief), for plaintiff in error.

Roy St. Lewis, U. S. Atty., of Oklahoma City, Okl. (Leslie E. Salter, Asst. U. S. Atty., of Tulsa, Okl., on the brief), for the United States.

Before LEWIS, Circuit Judge, and MUNGER and FARIS, District Judges.

MUNGER, District Judge. The plaintiff in error was convicted under an indictment charging that he transported and caused to be transported an automobile in interstate commerce, knowing it to have been stolen, and prosecutes error. There are two writs of error in this case, but as the second writ is founded upon an amended assignment of errors, and a second writ of error to the same judgment, the latter only needs to be considered.

[1] The sufficiency of the indictment is challenged. It alleged that plaintiff in error and others feloniously transported and caused to be transported in interstate commerce, from Anadarko, Okl., into Arizona, a motor vehicle, to wit, one Marmon seven-passenger touring automobile, engine No. 2179, which had theretofore been stolen from Joe Abraham, the owner thereof, at Bristow, Okl., they (naming the defendants) knowing the said described motor vehicle to have been stolen. The objection urged is that the indictment does not give the particulars of the theft, and especially the time when it occurred. The offense created by the National Motor Vehicle Theft Act (41 Stat. 324; Comp. Stat. §§ 10418b–10418f), of transportation of a stolen motor vehicle, is in many respects similar to the offense of receiving stolen goods, knowing them to have been stolen. It is not necessary to allege the facts of the original theft, as would be required in a prosecution for the theft, such as the time or place of the theft. 2 Bish. Cr. Proc. § 984; 34 Cyc. 520, 522. An indictment under the National Motor Vehicle Theft Act need not allege the name of the owner or person from whom the vehicle was stolen, its value, nor directly that it was stolen. Foster v. United States (C. C. A.) 4 F. (2d) 107, 108; Whitaker v. United States (C. C. A.) 5 F.(2d) 546, 547. See, also, Kirby v. United States, 174 U. S. 47, 63, 64, 19 S. Ct. 574, 43 L. Ed. 890; White v. United States (C. C. A.) 273 F. 517.

The indictment in this case gave a specific

description of the vehicle, described it as stolen from a person who was named as the owner, stated the place of the larceny, and alleged transportation in interstate commerce with knowledge that it was stolen, and it embraced all the elements of the offense as defined by the act of Congress.

[2] A motion was made by plaintiff in error, at the close of all the evidence, requesting the direction of a verdict of acquittal, and error is assigned to the refusal of this request. It was essential for the government to prove that the automobile had been stolen from Joe Abraham, the owner as alleged (1 Bishop, Cr. Proc. § 488 [2]), and that Herbert Abraham knew it to be stolen, at the time it was transported in interstate commerce. The testimony of Joe Abraham, the father of Herbert Abraham, was offered by the government to prove the ownership of the automobile, and the larceny. In his testimony he claimed that he had made a present of the automobile to the son.

Without stopping to determine whether there was substantial evidence of the ownership of the vehicle by Joe Abraham, as alleged, the question must be considered whether there was sufficient evidence that it was stolen, even if it was Joe Abraham's property. If there was a larceny, it occurred in Oklahoma. The statute of Oklahoma relating to the subject, is as follows:

"Larceny is the taking of personal property accomplished by fraud or stealth, and with intent to deprive another thereof." Section 2101, Comp. Stat. Okl. 1921.

[3] To constitute larceny under this statute there must be an animus furandi at the time of the taking, an intent to deprive the owner, permanently of his property. Mitchell v. Territory, 7 Okl. 527, 533, 54 P. 782; Devore v. Territory, 2 Okl. 562, 563, 37 P. 1092; Ex parte Millsap, 29 Okl. 472, 474, 118 P. 135; Smith v. State, 10 Okl. Cr. 544, 548, 139 P. 709. See 2 Bishop, Cr. Law, §§ 758, 842; 2 Bishop, Cr. Proc. § 698a. The proof that the car was stolen rests on the mere statement of a legal conclusion to that effect, made by Joe Abraham as a witness for the government. Whether this testimony was sufficient depends upon a consideration of the facts in the case.

[4] The evidence shows that Joe Abraham, a Syrian, came to the United States as a young man, and for many years has lived at Bristow, Okl., where he has accumulated a large amount of property and has been conducting many lines of business. His family consisted of his wife and five children. He is illiterate, except that he can print the letters of his name. In the conduct of his business he gave broad authority to his two eldest sons, one of whom was the plaintiff in error. In 1918, when Herbert Abraham, the plaintiff in error (hereafter referred to as Herbert), was about 16 years of age, his father made him a present of an automobile. Herbert exercised the exclusive control over this vehicle. In 1920 the father consented to his purchase of a new automobile. After the purchase, Herbert had the exclusive control of it. Herbert lived in his father's house, as a member of the family. The automobile was kept in a garage near the family residence. Herbert kept the keys to the vehicle, and it was driven only by himself or by those to whom he gave permission. The father testified that he gave this automobile to Herbert, to do with it what he pleased; that he could trade it off for himself, or do any thing that he wished with it; "he could trade it for a jackknife, or anything, and I would never say a word about it;" "Herbert could do anything he wanted with the car."

In February, 1921, the automobile disappeared from Bristow. Testimony was given that a man named Frank Miller, with a companion who was unknown, soon afterwards had the automobile at a farm about 11 miles from Bristow, and stored it in a barn at that place, by arrangement with the tenant on the farm. About two months later it was taken from this barn. A dispute in the testimony arises as to what then occurred. Hobart Baugus, a codefendant with the plaintiff in error, and who had been in the employment of Herbert for some time as a mechanic, testified that Herbert told him that he had this automobile stored in this barn, and desired to have him take the car to Los Angeles, Cal., and to deliver it to a man named Ireson, and that he agreed to do so; that Herbert gave him a sum of money to pay the expenses of the trip, and arranged to send him more money along the way as it might be needed; that Herbert and he took the car from the barn, drove it to another place, had it repaired, and then Baugus drove the car on the way to California as far as Arizona, where he was arrested and the car was taken from him by the officers; that Herbert sent him sums of money along the journey, in response to telegraphic requests that he had sent.

On the other hand, there is testimony that Frank Miller and some companion came to this barn and drove the automobile away from that place. The evidence does not show by whom the automobile was taken in February, 1921, unless it can be inferred that Frank

Miller and his companion did so, because of the fact that they had it at this barn soon afterwards. But, if the inference may be drawn, there is no evidence to show whether or not Herbert Abraham authorized or consented to the act, or whether or not it was taken by a claim of right.

[5] One who takes property under a bona fide claim of title in another is not guilty of larceny. 2 Bish. Cr. Law, § 851. There was no testimony to show what was the motive of Frank Miller, or of the person who took the automobile, at the time it was taken. The circumstances are at least as consistent with the theory that it was taken by the authority of Herbert Abraham, under a bona fide claim of right, as a preliminary to its journey to California for his benefit, and pursuant to some plan of his own, as they are with a theory that it was taken without his authority. Herbert Abraham did not testify. Joe Abraham testified that he did not consent that the automobile should be taken from Oklahoma to Arizona; but, if he is to be regarded as the owner of the vehicle, it is obvious that he had granted the complete control of it to his son, giving him an agency of the widest scope, and, if the automobile was transported by the son's authority, larceny was not committed.

The conclusion is that there was no sufficient evidence to show an intention on the part of the taker of the vehicle to deprive the owner of his property, and therefore that no larceny was shown, and that a verdict should have been directed for the plaintiff in error. The conclusion reached makes it unnecessary to discuss other assignments of error.

The conviction will be reversed, and a new trial will be awarded.