**Frank ZAVLANES, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 22315.**

United States Court of Appeals Ninth Circuit.

Jan. 31, 1969.

Vincent Sullivan, San Diego, Cal., for appellant.

Edwin L. Miller, Jr., U. S. Atty., Shelby R. Gott, Asst. U. S. Atty., San Diego, Cal., for appellee.

Before CHAMBERS and BARNES, Circuit Judges, and STEPHENS *, District Judge.

CHAMBERS, Circuit Judge:

In October, 1965, Frank Zavlanes and Gary Breese were workmen at the Redmond Plastic Products plant in Kansas

---

* The Honorable ALBERT LEE STEPHENS, Jr., United States District Judge, sitting by designation.

City, Missouri. During the night of October 18 or the morning of October 19, Breese's Missouri license plates disappeared off his car at the plant.[1] (Breese worked regularly but from time to time he worked on each shift, the company operating around the clock.)

On the afternoon of May 7, 1966, Zavlanes appeared at the used car lot of the Greenlease Motor Car Company, Cadillac dealers in Kansas City, Missouri. He expressed interest in a used white 1964 Oldsmobile 98 convertible coupe, serial number 884MO59934, but was refused permission to take it away for testing. The next morning, Saturday, all the Greenlease Company had left of the car was the memory of it and its own set of keys.

The car was located eventually in January, 1967, near San Diego in a repair shop where Zavlanes had left it for extensive repairs. And, it had on it Breese's license plates. Zavlanes readily admitted he drove it from Kansas City to California. If Greenlease (and not Zavlanes) owned the car, all of the intent required of Zavlanes by the Dyer Act (interstate transportation of a stolen motor vehicle) is easily inferred. Zavlanes was convicted and sentenced to prison. He appeals and we affirm.

As soon as local and federal officers established contact with Zavlanes in San Diego, he offered a fantastic alibi in which he persevered through the trial. He insisted Breese loaned him the license plates and that he bought the car from a Nova Motor Company in Kansas City with financing from the Allied Investment Corp., another Kansas City Company. He presented a "duplicate" copy of a chattel mortgage wherein he was listed as mortgagor and the Nova Car Company as mortgagee. This bears the

date of December 4, 1966. The only trouble with the document is that it is full of crude alterations. One does not need a handwriting expert to question the document. The blanks at the top of the paper appear filled by using black carbon or black pen. A little lower, the blanks in the line describing the car (the Oldsmobile) as well as the remaining blanks appear filled with blue writing. This line with the blanks for the description of the car show evidence of crude erasures before "used," "1964," "Oldsmobile," "8," "white" and 884MO59934" were written in.

Also found in the car was a filled in bill of sale (California Motor Vehicle form) purporting to show a sale of the car from one William Reese of Highway Motors of Kansas City to Frank Zavlanes of a 1964 Oldsmobile convertible (no number given). This was entirely in the handwriting of Zavlanes. He was just "practicing," he told officers, in effect, when he drew the Reese bill of sale, and persisted in the same story to the jury.

Zavlanes admitted a visit in May, 1966 to the Greenlease lot, but denied inspecting or looking at an Oldsmobile. Obviously, the jury did not believe him.

A representative of Greenlease Motor Company testified that they had a 1964 white convertible coupe on the lot in Kansas City on May 7 and it was missing on the morning of May 8. The ledger account of the company would indicate the Oldsmobile coupe on March 17, 1966, Greenlease acquired and "signed off the title" on August 30, 1966, when T. H. Mastin, an insurance agent, paid Greenlease for its loss. The company's books are adequate evidence it owned the car from March to August, 1966.

1. Breese's testimony on the stand was a little confused as to date and as to what car the plates had been removed from (he had changed cars about the time the plates disappeared). But his report to the police indicates that the theft of the plates occurred the night of October 18–19.

Missouri issues its car licenses on a staggered basis for a year at a time. Thus, one's license may expire any month of the year. Also, Missouri really licenses an individual to have a car on the road. If he sells the car before the plates have expired, he puts the plates on another car he has purchased to replace the old car.

■ If that were not enough, both witnesses from the Greenlease Company at the trial said their company owned it, and they were in position to know. That is enough to make a prima facie case for ownership in a Dyer Act case.[2] If it were not enough, one of the Greenlease witnesses said Greenlease never had a car for sale on its used car lot that it did not own itself.

In rebuttal, the government put in evidence Exhibit 9, Greenlease's original certificate of title, showing Greenlease purchased the car in March, 1966. Then there was on the reverse of the title certificate an assignment of title (Exhibit 9) by Greenlease to an insurance company bearing date of July 30, 1966. (Apparently Greenlease had to "sign" over the title to the insurance company and wait for its money.)

The appellant complains that there was never any showing of the authority of the billing clerk who executed the assignment for Greenlease to the insurance company to sign the document. Maybe so and maybe not. But if appellant were successful on this point, the title document would still be evidence that Greenlease acquired the ownership of the car in March, 1966, and had not attempted to do anything with the title until midsummer 1966. If Greenlease owned the car in May, 1966, it makes no difference what it did or did not do with the title later. If the clerk who assigned the title on July 30 had no authority to sign, all one can say on the facts here is: So what?

■ It is also contended that the evidence does not sustain the verdict and judgment. This has no merit. The government did get itself into something of a problem (the eventual assignment of title) by apparently offering everything it had. But that only gave appellant a thin argument on a matter of little consequence.

None of the foregoing is intended to be critical of counsel for appellant. He did his best as the overtones of Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, require. He didn't have much to go on.[3] He had a client who had never read:

> "Oh, what a tangled web we weave
> When first we practice to deceive."
> —Sir Walter Scott, Marmion, Canto VI, stanza 17

Judgment of conviction affirmed.

2. It is not even necessary in a Dyer Act indictment to name the owner. Ownership is, of course, an incident to proof that a vehicle was stolen contrary to the Act. Whitaker v. United States, 9 Cir., 5 F.2d 546.

For an early case for the general law to the effect that where title is not the ultimate issue of the case, but an incident, parol evidence of ownership may be received, see Chicago, St. P., M. & O., Ry. Co. v. Gilbert, 8 Cir., 52 F. 711.

It should also be pointed out that if a "best evidence" objection had any validity, it was not made.

3. No motion for acquittal was made at the conclusion of plaintiff's case.

It is a heady principle to announce that the improbability of an alibi may sustain the entire affirmative burden of proof. Certainly such a thing should be used sparingly. But the testimony of Zavlanes on the stand was so ridiculous that some such principle might be applied here, if necessary. However, it is not needed here. But certainly more than one juror must have said to himself, "I have heard enough."